UNITED STATES of America,
Plaintiff–Appellee,

v.

David AGUIRRE, Defendant–Appellant.

No. 89–50265.

United States Court of Appeals,
Ninth Circuit.

June 7, 1993.

KOZINSKI, Circuit Judge:

██ This case was remanded to us for further consideration in light of *Doggett v. United States,* — U.S. —, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). In our earlier disposition, we held there was no violation of defendant's Sixth Amendment right to a speedy trial and affirmed the district court's denial of his motion to dismiss the indictment. Our earlier decision concluded that the district court applied the proper legal standard, the test set out in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972),[1] and that its underlying factual findings were not clearly erroneous. Following *Barker,* we counted factor (4), prejudice from the delay, against Aguirre because he didn't show actual prejudice.

We must revisit our decision because *Doggett* modified the *Barker* test in one material respect: Under *Doggett,* factor (4) can weigh in the defendant's favor even without a showing of actual prejudice. The Court observed that "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify," — U.S. at —, 112 S.Ct. at 2693, and held that, in some cases, the burden of proving prejudice could no longer be placed on the defendant. We must decide whether Aguirre's is such a case.

Mary F. Gibbons, North Hollywood, CA, for defendant-appellant.

Robert L. Brosio, Stefan D. Stein, Asst. U.S. Attys., Los Angeles, CA, for plaintiff-appellee.

## OPINION

On Remand from the Supreme Court of the United States.

Before: PREGERSON, BEEZER and KOZINSKI, Circuit Judges.

### Facts

In an indictment filed October 27, 1983, Aguirre was charged with conspiracy to possess government checks stolen from the mail. Agents charged with executing the warrant for his arrest learned he was in England when the indictment was filed. Because the agents could not find Aguirre, they entered "stops" on him in three federal law enforcement databases and one in California, Aguirre's home state and the state where the charged crime was committed. Aguirre was finally arrested in October 1988—five years after his indictment—when customs agents

---

1. To determine whether a defendant's right to a speedy trial has been violated a court must weigh the following factors:

    [1] whether delay before trial was uncommonly long, [2] whether the government or the defendant is more to blame for the delay, [3] whether, in due course, the defendant asserted his right to a speedy trial, and [4] whether he suffered prejudice as the delay's result.

    *Doggett,* — U.S. at —, 112 S.Ct. at 2690; *see also Barker,* 407 U.S. at 530, 92 S.Ct. at 2192.

ran a computer check on him as he crossed the border from Mexico into Arizona.

This, however, wasn't the first time that Aguirre had heard of the charges against him. Back in October 1983, while Aguirre was on business travel in England, he learned he had to make a court appearance in the Central District of California in connection with what he described as a "complaint" that had been filed against him. He responded by sending an affidavit from the U.S. Embassy asking for a continuance of the proceedings against him so that he could meet his work commitment overseas. In that affidavit Aguirre swore he could not return to the United States until January 1984. Despite this, Aguirre returned on November 2, 1983—only nine days after he had stated under oath that business commitments would keep him in England until January.

When he returned to California, Aguirre didn't inquire about the obligation to appear in court, contrary to his earlier sworn statement that he would do so upon returning to the United States. Within a month, or perhaps sooner, Aguirre moved to Arizona. He lived and worked there until his arrest in October 1988. After an evidentiary hearing on Aguirre's motion to dismiss the charges for violation of his right to a speedy trial, the district court found he was aware of the charges against him when the indictment was returned in October of 1983. R.T. 2/8/89 at 72–74.[2]

### Discussion

■ *Doggett* holds that whether the defendant must show actual prejudice depends on whether it is he or the government who is responsible for the delay. —— U.S. at ——, 112 S.Ct. at 2692–94. To demonstrate this

new rule, *Doggett* described three situations and explained that the defendant must show a different level of prejudice under each. Where the government proceeds "with reasonable diligence," the "speedy trial claim would fail ... as a matter of course however great the delay, so long as [the defendant] could not show specific prejudice to his defense." *Id.*, —— U.S. at ——, 112 S.Ct. at 2693.[3] Where "the Government ... intentionally [holds] back in its prosecution of him to gain some impermissible advantage at trial, [such] official bad faith in causing delay will be weighed heavily against the government and [a lengthy] delay would present an overwhelming case for dismissal." *Id.* (citations omitted). Where the government is negligent in pursuing a defendant, prejudice will be presumed and its weight in defendant's favor will depend on the length of the delay. *Id.* Thus, we have to look at the length of the delay and the reasons for it independently under factors (1), (2) and (3) of *Barker;* we again look at those same factors collectively, as they bear upon our decision to presume prejudice under factor (4). "While such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria, it is part of the mix of relevant facts, and its importance increases with the length of delay." *Doggett,* —— U.S. ——, 112 S.Ct. at 2693.

■ To determine whether we should presume prejudice, we must consider the district court's findings with respect to both the length and reason for the delay. Here, five years passed from the date of the indictment to the arrest. Though we "cannot definitely say how long is too long in a system where justice is supposed to be swift but deliber-

---

**2.** At the hearing, Aguirre admitted he was aware of the obligation to appear in court in October 1983. He explained his failure to appear by claiming that his lawyer had told him that everything had been taken care of. Yet when the court subpoenaed his lawyer, the lawyer testified he was not representing Aguirre at that time and, therefore, didn't discuss the charges with him— let alone tell him that a pending indictment had been taken care of. The lawyer's testimony struck a double blow to Aguirre's claim: It not only undermined the argument itself, it also shattered Aguirre's credibility. The district judge

found that Aguirre knew of the charges against him.

**3.** This analysis assumes a defendant who, like Doggett himself, was not culpable in causing or extending the delay. If the defendant is culpable in causing the delay—such as when he actively evades prosecution—the prejudice growing from the delay he caused cannot be weighed in his favor. Because the district court here did not make a finding of culpability on Aguirre's part, we dispose of Aguirre's case on other grounds rather than remanding for that determination.

ate," *Barker*, 407 U.S. at 521, 92 S.Ct. at 2187, a five year delay is long enough to trigger a further look. *United States v. Williams*, 782 F.2d 1462, 1465 (9th Cir.1986) (quoting *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192).

■ Central to our analysis is the district court's finding that the government's search for Aguirre was diligent. R.T. 2/8/89 at 75. Because the finding on this point is essentially a determination that the government has not been negligent, we must review it "with considerable deference." *Doggett*, — U.S. at —, 112 S.Ct. at 2691. Aguirre has pointed to nothing in the record to convince us this finding was clearly erroneous. Because the search was diligent, we weigh factor (2)—whether the government or the defendant is more to blame for the delay— against the defendant.

■ The government's diligence also means that Aguirre must show prejudice to prevail. Indeed, *Doggett* specifically recognized that delay such as occurred here is both unavoidable and permissible: "Our speedy trial standards recognize that pretrial delay is often both inevitable and justifiable. The government may need time to collect witnesses against the accused, oppose his pretrial motions, or, *if he goes into hiding, track him down.*" — U.S. at —, 112 S.Ct. at 2693 (emphasis added). Where the government searches "with reasonable diligence," the "speedy trial claim would fail ... as a matter of course however great the delay, so long as [the defendant] could not show specific prejudice to his defense." *Id.* Thus, this case is quite unlike *Doggett* and *United States v. Shell*, 974 F.2d 1035 (9th Cir.1992) (reversing in light of *Doggett* because defendant should not have been re-

quired to show prejudice), which applied a presumption of prejudice precisely because the government wasn't diligent.

■ Under factor (3) of *Barker*, the district court's finding that Aguirre knew of the charges against him, yet failed to answer them, R.T. 2/8/89 at 73–75, further undermines his speedy trial claim.[4] The Speedy Trial Clause primarily protects those who assert their rights, not those who acquiesce in the delay—perhaps hoping the government will change its mind or lose critical evidence. *See Doggett*, — U.S. at —, 112 S.Ct. at 2691 (acquiescence causes *"Barker*'s third factor, concerning invocation of the right to a speedy trial, [to be weighed] heavily against him"); *Barker*, 407 U.S. at 521, 92 S.Ct. at 2187 ("Delay is not an uncommon defense tactic. As the time between the commission of the crime and trial lengthens, witnesses may become unavailable or their memories may fade. If the witnesses support the prosecution, its case will be weakened, sometimes seriously so."); *id.* at 532, 92 S.Ct. at 2193 ("We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.").[5]

■ In addition to its independent significance under factor (3) of *Barker*, Aguirre's failure to assert his right to a speedy trial also bears on *Doggett's* prejudice analysis. *Doggett* holds that we should presume prejudice only if the defendant isn't responsible for the delay. It follows that Aguirre's acquiescence in the delay, despite his knowledge of the outstanding indictment, is a second reason to place the burden of proving prejudice on him—and place it more heavily. Aguirre could have, at any moment, ended

---

**4.** The greater part of two days of evidentiary hearings focussed on this point. Ultimately the district court's finding rested on its determination that Aguirre was not credible. R.T. 2/8/89 at 73–74. This finding, which is entitled to special deference because it rests upon the district court's credibility determinations, *see Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985), is not clearly erroneous.

**5.** Here, we balance Aguirre's failure to assert his speedy trial right as one of four factors under

*Barker*. However, this case is different than those where, in the face of an indictment, a defendant takes affirmative steps to elude law enforcement and thus causes the delay himself. In such cases, a finding of waiver is proper and courts needn't perform the *Barker* balancing test. *See United States v. Sandoval*, 990 F.2d 481 (9th Cir.1993) ("Therefore, when the defendant seeks to avoid detection by American authorities and any post-indictment delay can be attributed to him, he waives the right to a speedy trial.") (internal quotation marks omitted).

the delay and avoided any prejudice caused by the passage of time. He only had to get in touch with federal authorities and tell them his whereabouts, as he promised to. Failing to assert his speedy trial right, Aguirre's inaction contributed to the delay; accordingly, he is entitled to no presumption of prejudice.

██ Because we can't presume prejudice, Aguirre must show he was actually prejudiced; we concluded in our earlier decision that he hadn't done so. But even if Aguirre had shown actual prejudice, we would still have to balance the prejudice against the facts that he didn't assert his speedy trial rights and that the government wasn't to blame for the delay. Where, as here, the government diligently pursues the defendant and the defendant is aware the government is trying to find him, even severe prejudice would still not be enough to tip the balance in his favor.[6] Here Aguirre knew his charges were pending, but didn't advise federal authorities of his return to the United States; the government, on the other hand, conducted a reasonably diligent investigation to find him. It's true that prejudice can arise with time, but it's equally true in situations like Aguirre's that the defendant, not the government, is in the best position to stop the clock and avoid the damage.

AFFIRMED

PREGERSON, Circuit Judge, dissenting:

I believe the extraordinary and unjustified five-year delay between Aguirre's indictment and trial violated the Sixth Amendment guarantee of a speedy trial; therefore, I would reverse the conviction.

I

Aguirre was indicted in the Central District of California on October 27, 1983. At that time, Aguirre was working in Europe, but his family continued to live in Los Angeles. Sometime before the indictment was filed, Aguirre learned of the need for a "court appearance." On October 24, 1983, three days *before* the indictment was filed, Aguirre enlisted the aid of the United States Embassy in London to request additional time to appear in court. Aguirre received no response to this request.

At that time, Aguirre could not have known that charges were pending against him because the indictment had not yet been returned. Furthermore, he could not have known that the indictment was about to be returned because grand jury proceedings are confidential.

About a week later, Aguirre returned to the United States. He settled in Arizona, where he lived and worked under his true identity. He secured employment with the Arizona Department of Revenue, which required that he obtain a security clearance. He obtained the clearance without a problem. Later he held a number of jobs that required him to be bonded and fingerprinted. In addition, he travelled across the U.S.–Mexico border a number of times during the period the warrant was outstanding. Once, he was the subject of a Tucson Police Department investigation, arising out of a New Year's Eve "altercation." So, although Aguirre had numerous contacts with law enforcement tracking systems, he was never made aware of the pending indictment until he was arrested crossing the U.S.–Mexico border *five* years after the indictment was filed.

The government's attempts to locate Aguirre while he was living openly in this county were feeble and ineffective, at best. The government took no active steps to locate Aguirre after the indictment was filed. The government did not contact any of Aguirre's relatives or friends who continued to live in Los Angeles after Aguirre moved out of state. It did not attempt to locate him through his social security or federal tax records. It did not even run a simple credit check on Aguirre. *See Doggett v. United States*, — U.S. —, —, 112 S.Ct. 2686, 2689, 120 L.Ed.2d 520 (1992) ("within minutes" a "simple credit check" revealed the location of defendant's residence and job). In short, the government did nothing more than place "stops" in three law enforcement

---

6. *See Doggett*, — U.S. at — – —, 112 S.Ct. at 2690–91 (the government's diligence and the defendant's acquiescence in the delay weigh heavily in the balance against prejudice).

computer systems and then forgot about the matter for the next five years.

## II

The "right to a speedy trial ... is one of the most basic rights preserved by our Constitution." *Klopfer v. North Carolina*, 386 U.S. 213, 226, 87 S.Ct. 988, 995, 18 L.Ed.2d 1 (1967). *Accord Barker v. Wingo*, 407 U.S. 514, 515, 92 S.Ct. 2182, 2184, 33 L.Ed.2d 101 (1972). To determine whether a defendant's right to a speedy trial has been violated, we must consider (1) whether the delay before trial was uncommonly long; (2) whether the government or the defendant is more to blame for that delay; (3) whether, in due course, the defendant asserted his right to a speedy trial; and (4) whether he suffered prejudice as a result of the delay. *Doggett*, —— U.S. at ——, 112 S.Ct. at 2690 (citing *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192).

## III

As the majority recognizes, the five-year delay between the indictment and trial presumptively prejudiced Aguirre. *Doggett*, —— U.S. at —— –—— n. 1, 112 S.Ct. at 2690–91 n. 1 ("Depending on the nature of the charges, ... courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year.") In fact, the delay is extraordinary. *See Barker*, 407 U.S. at 534, 92 S.Ct. at 2194 (characterizing the more than five-year delay in that case as "extraordinary").

I part company with the majority with respect to the remaining factors. The majority errs by deferring to the district court's clearly erroneous finding that Aguirre, and not the government, bears responsibility for the delay. The majority also erred in concluding that Aguirre failed to assert his speedy trial right in due course.[1]

### A

The district court found that Aguirre—rather than the government—was responsible for the delay. Although we review such a finding "with considerable deference," we will not sustain it if clearly erroneous. *United States v. Williams*, 782 F.2d 1462, 1465 (9th Cir.1985).

### 1

The district court concluded that Aguirre caused the delay because he failed to present himself to authorities on his return from Europe. But it is clearly established that a "defendant has no duty to bring himself to trial; the State has that duty...." *Barker*, 407 U.S. at 527, 92 S.Ct. at 2190 (citing *Dickey v. Florida*, 398 U.S. 30, 37–38, 90 S.Ct. 1564, 1568–69, 26 L.Ed.2d 26 (1970) ("Although a great many accused persons seek to put off the confrontation as long as possible, the right to a prompt inquiry into criminal charges is fundamental and the duty of the charging authority is to provide a prompt trial.")

Beyond his failure to deliver himself to authorities for trial on an indictment he was unaware of, Aguirre did nothing to evade the government. He lived openly under his true identity. He voluntarily submitted to government security investigations. On several occasions before his arrest he crossed the U.S.–Mexico border and passed under the eyes of customs agents without incident. Thus, the district court's conclusion that Aguirre is responsible for the delay is without factual basis and, hence, clearly erroneous.

### 2

As for the government's efforts to bring Aguirre to trial, the district court stated that, "I don't know what more the government can do if they believe from the man's former lawyer that he has gone overseas. They put out warrants for his arrest, and they wait for somebody who identifies him...." Thus, the district court found that the government's failure to locate and bring Aguirre to trial until five years after his indictment was not the result of its negligence.

The effort made by the government in this case is more lethargic than even its efforts to apprehend the petitioner in *Doggett*. —— U.S. ——, 112 S.Ct. 2686. In that case, two police

---

1. The district court did not reach this issue.

officers set out to arrest Doggett at his parents' house about a month after an indictment was filed against him. Doggett's mother told the officers that Doggett had left for Colombia four days earlier. The government then sent word of the outstanding arrest warrant to all United States Customs stations, and to a number of law enforcement organizations. It also placed Doggett's name in two law enforcement computer networks.

Sometime later, when a federal case agent learned Doggett was awaiting trial in a Panama jail, the agent requested that Panama "expel" Doggett to the United States. Although the Panamanian authorities promised to do so when Doggett's proceedings had run their course, they simply freed Doggett, who eventually passed unhindered through customs and resettled in the United States. The government finally arrested Doggett six years after his return to the United States, just days after it discovered his address through a simple credit check. *Id.* —— U.S. at ——, 112 S.Ct. at 2689–90.

The district court in *Doggett* found that the delay between Doggett's indictment and arrest " 'clearly [was] attributable to the negligence of the government,' and that Doggett could not be faulted for any delay in asserting his right to a speedy trial, there being no evidence that he had known of the charges against him until his arrest." *Id.* —— U.S. at ——, 112 S.Ct. at 2690 (citations omitted). On review before the Supreme Court, the government argued that it had satisfied its duty to pursue Doggett with diligence. The Court rejected that argument, noting that the record contained *no* evidence to controvert the district court's finding of government negligence. *Id.* —— U.S. at ——, 112 S.Ct. at 2691 ("The Government gives us nothing to gainsay the findings that have come up to us, and we see nothing fatal to them in the record.") In its conclusion, the Court characterized the government's efforts as an "egregious" failure to prosecute Doggett. *Id.* —— U.S. at ——, 112 S.Ct. at 2694.

The Supreme Court's discussion of the government's negligence in *Doggett* does not necessarily constitute a ruling that the government's efforts in that case were insufficient as a matter of law. It does, however,

make it difficult for me to sustain the district court's finding that the lesser effort in this case satisfied the government's duty to "pursue [Aguirre] with reasonable diligence from his indictment to his arrest." *See id.* —— U.S. at ——, 112 S.Ct. at 2693.

Based on the record and on the Supreme Court's statements in *Doggett*, I conclude that the district court clearly erred when it attributed fault for the delay to Aguirre. The government's failure to make anything more than a perfunctory effort to locate Aguirre amounted to a clear breach of its duty to exercise reasonable diligence in attempting to apprehend him.

**B**

The third factor, "whether, *in due course*, the defendant asserted his right to a speedy trial," *Doggett*, —— U.S. at ——, 112 S.Ct. at 2690 (emphasis added), also weighs in Aguirre's favor. Promptly after Aguirre was arrested, he filed a motion to dismiss the indictment for violation of his right to a speedy trial. Thus, Aguirre asserted his right "in due course"—that is, as soon as he learned he would be tried.

The majority states that Aguirre's speedy trial claim is undermined because he knew an indictment was pending against him, yet failed to deliver himself to the authorities for trial. Quite to the contrary, the district court did not find that Aguirre was aware that an *indictment* was pending. The district court found only that prior to Aguirre's return to the United States,

Aguirre knew that there was a problem, and that he had been told that there was a problem. Whoever told him, I don't know. But at any rate [there was] some kind of a charge or complaint against him.

Moreover, nothing in the record supports the majority's conclusion that Aguirre knew that an indictment was pending against him. Aguirre's last communication with the government occurred days *before* the indictment was actually filed. The government never informed Aguirre or his family, through the mail or otherwise, that an indictment had been returned against Aguirre. And there is no evidence that Aguirre learned of the in-

dictment through any other means before his arrest.

The waiver of the right to a speedy trial, like any fundamental right, must be knowing and intelligent. *Barker*, 407 U.S. at 529, 92 S.Ct. at 2191. Where as here, the defendant is unaware of the charge pending against him, it is unfair and nonsensical to require that he demand a speedy trial. *Id.* at 528 n. 28, 92 S.Ct. at 2191 n. 28. *See also Doggett,* —— U.S. at ——, 112 S.Ct. at 2691 (absent evidence that a defendant knew an indictment was pending before his arrest, a defendant is "not to be taxed for invoking his speedy trial right only after his arrest").

Thus, Aguirre's pre-arrest failure to assert his speedy trial right should not be weighed against him.

### C

The fourth and final factor to consider is prejudice to the defendant. Prejudice must be assessed in the light of the interests the speedy trial right was designed to protect: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532, 92 S.Ct. at 2193. Aguirre's challenge goes to the third interest, which the Supreme Court has called the "most serious." *Id.*

The resolution of this last factor is dictated by the Supreme Court's holding in *Doggett*. There, the Court reversed the Eleventh Circuit's ruling that "actual prejudice" is a necessary element of a successful speedy trial act claim. The Court held that "[w]hen the Government's negligence thus causes delay six times as long as that generally sufficient to trigger judicial review, and when the presumption of prejudice, albeit unspecified, is neither extenuated, as by the defendant's acquiescence, nor persuasively rebutted, the defendant is entitled to relief." *Doggett*, —— U.S. at ——, 112 S.Ct. at 2694 (citations and footnotes omitted).

As applied to the facts of this case, the holding in *Doggett* requires that Aguirre's conviction be reversed. The government's negligence in this case caused a delay in Aguirre's trial "[five] times as long as that generally considered sufficient to trigger judicial review." *Id.* The presumption of prejudice arising from the delay is not "extenuated," because Aguirre did not "acquiesce[ ]" in the delay. *See id.* And the government has failed to rebut the presumption of prejudice that arises in the face of such an extraordinary delay. *See id.*

### III.

The majority acquiesces in a finding that sanctions a "prolonged and unjustifiable delay[ ]" in bringing a defendant to trial. *See Doggett,* —— U.S. at ——, 112 S.Ct. at 2693. The Court in *Doggett* warned that courts must not tolerate such a course:

Condoning prolonged and unjustifiable delays in prosecution would both penalize many defendants for the state's fault and simply encourage the government to gamble with the interests of criminal suspects assigned a low prosecutorial priority. The Government, indeed can hardly complain too loudly, for persistent neglect in concluding a criminal prosecution indicates an uncommonly feeble interest in bringing an accused to justice; the more weight the Government attaches to securing a conviction, the harder it will try to get it.

*Doggett,* —— U.S. at —— —— ——, 112 S.Ct. at 2693–94.

The Supreme Court remanded this case for our reconsideration in light of *Doggett*. Applying the teachings of *Doggett* to the record before us, I reach the inescapable conclusion that Aguirre's fundamental right to a speedy trial has been violated.

Accordingly, I would reverse the judgment of the district court and remand the case with instructions to reverse Aguirre's conviction and dismiss the underlying indictment.