19 F.3d 30
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Gutberto BELTRAN-GUTIERREZ, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jose Beltran CARDENAS, Defendant-Appellant.
 Nos. 93-10146, 93-10147.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 9, 1994.
Decided March 22, 1994.
 
 Before: ALARCON and FERNANDEZ, Circuit Judges, and WILSON, District Judge.*
 MEMORANDUM**
 Gutberto Beltran-Gutierrez (Gutierrez) was convicted of conspiracy to possess with intent to distribute heroin and possession with intent to distribute heroin, in violation of 21 U.S.C. Secs. 841(a)(1), 841(b)(1)(B)(i), and 18 U.S.C. Sec. 2. Jose Beltran-Cardenas (Cardenas) pled guilty to the same charges. In this appeal, Gutierrez raises several issues with regard to his conviction and sentencing. Cardenas appeals the sentence imposed by the trial court. We affirm because none of the appellants' claims are meritorious. We address each of their contentions under separate headings.
 I.
 Gutierrez argues he was denied a fair trial because the trial judge allowed the prosecutor to cross examine Cardenas on collateral issues outside the scope of direct examination and unrelated to Cardenas' credibility. We review the district court's ruling regarding the appropriate scope of cross examination for abuse of discretion. United States v. Arias-Villanueva, 998 F.2d 1491, 1508 (9th Cir.), cert. denied, 114 S.Ct. 573 (1993).
 On direct examination, Cardenas' testimony tended to exculpate Gutierrez of any involvement in the drug transaction. For example, Cardenas testified that he (1) did not tell Gutierrez what he put in Gutierrez's apartment, (2) owned the jacket, (3) invited Gutierrez into his apartment at the time the transaction was to take place just so that the agents "would not be distrustful," (4) was the one who pulled the bag with the heroin out of the jacket pocket, and (5) never offered Gutierrez any money to participate in the sale of heroin. During cross examination, and over Gutierrez's objection, the prosecutor questioned Cardenas with regard to the source of the heroin. Gutierrez contends that the admission of this testimony was prejudicial error. He argues that the admission of this evidence tending to incriminate Cardenas prejudiced his defense because it created a "potential 'rub-off' of guilt ... because they were originally charged as coconspirators in one indictment."
 Rule 611(b) of the Federal Rules of Evidence provides that "[c]ross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination." Fed.R.Evid. 611(b). This rule invests in the trial judge the discretion to allow the cross examiner a broader scope of inquiry than merely the subjects covered during direct examination. Indeed, "the trial court may permit cross-examination as to all matters reasonably related to the issues ... put in dispute by [a witness'] testimony on direct." Arias-Villanueva, 998 F.2d at 1508 (citation and internal quotation omitted). For example, in United States v. Vasquez, 858 F.2d 1387, 1392 (9th Cir.1988), cert. denied, 488 U.S. 1034 (1989), we held that a defendant's direct testimony about leaving his apartment on the day of his arrest justified cross examination regarding evidence seized from that apartment.
 In this matter, the record demonstrates that the cross examination of Cardenas was intended to impeach his credibility. The trial judge stated, in response to defense counsel's objection to the scope of the cross examination:
 I just want to cut off all of this, because this man the jury could so find is lying through his teeth. This is collateral cross examination to prove that he's a liar on a lot of issues and she [is] entitled to pursue it. His general credibility is an issue, and she's attacking his general credibility having to do with a story about getting this heroin.... [S]ome people might find [this] one of the biggest cock and bull stories ever floated in the State of Arizona. So I'm going to leave it at that.
 The judge later observed:
 [T]his cross examination ... goes to the witness's general credibility, because this witness is saying he's--he's trying to shoulder the blame for himself and exculpate his colleague. And the assistant has the right to demonstrate that he's a general liar, and that he's not to be believed in his exculpatory observations.
 The court did not abuse its discretion in finding that the challenged cross examination was intended to reflect upon Cardenas' credibility. Furthermore, the subject matter of the cross examination reasonably related to the drug transaction involved in this case. Finally, Gutierrez has failed to demonstrate how evidence outlining the manner in which the heroin was acquired was prejudicial to his defense. In emphasizing Cardenas' heavy involvement in the smuggling of heroin into the United States, the prosecutor unnecessarily ran the risk of persuading the jury that Gutierrez was a hapless dupe innocently caught in Cardenas' evil enterprise. We accordingly reject Gutierrez's contention that the district court should have excluded the testimony under Federal Rule of Evidence 403 on the basis that its prejudicial effect outweighed its probative value. The district court did not abuse its discretion by admitting this testimony.
 II.
 Pursuant to United States Sentencing Guidelines Sec. 3C1.1 and Application Note 3(b), the trial judge enhanced Gutierrez's sentence by two levels for obstruction of justice for committing perjury. Gutierrez contends that the decision to enhance his sentence was based in part upon his suppression hearing testimony. He argues that the court was precluded from considering this testimony because it was "immunized" pursuant to Simmons v. United States, 390 U.S. 377 (1968). For the reasons discussed in our published opinion filed today, we reject this contention. Suppression hearing testimony is admissible to impeach a defendant's credibility. Gutierrez's prior inconsistent testimony also demonstrates that he obstructed justice in this matter by committing perjury.
 Gutierrez asserts that the district court erred in enhancing his sentence because it failed to make an independent finding that he committed perjury as required by the Supreme Court. United States v. Dunnigan, 113 S.Ct. 1111, 1117 (1993).
 In Dunnigan, the Supreme Court defined perjury as the giving of "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory." Id. at 1116. The Court stated it preferred that district courts "address each element of the alleged perjury in a separate and clear finding." Id. at 1117. The Court went on to note, however, that a district court's determination that enhancement is required would be sufficient if "the court makes a finding of an obstruction or impediment of justice that encompasses all of the factual predicates for a finding of perjury." Id. Thus, the Court upheld the following district court ruling:
 
 
 1
 The court finds that the defendant was untruthful at trial with respect to material matters in this case.... [B]y virtue of her failure to give truthful testimony on material matters that were designed to substantially affect the outcome of the case, the court concludes that the false testimony at trial warrants an upward adjustment by two levels.
 
 
 2
 Id. at 1114-15.
 
 
 3
 In the matter before this court, the district court found that there was a
 
 
 4
 well-orchestrated defense between both defendant [Gutierrez] and co-defendant [Cardenas] to put before this jury a picture of innocence which the jury rejected as fabricated; I listened to it, I rejected it as fabricated. There were enumberable places where the transcript makes it perfectly clear that the credibility of both of the witnesses testifying to this defense were just shredded.
 
 
 5
 The district court effectively found that Gutierrez intentionally presented false testimony on matters so material as to present a false facade of innocence. This finding is sufficient under Dunnigan. Cf. United States v. Laury, 985 F.2d 1293, 1308-09 (5th Cir.1993) (holding sufficient under Dunnigan a district court's finding that the jury's verdict of guilt proved the defendant committed perjury and that the defendant made statements to impede the administration of justice).
 
 
 6
 Gutierrez further argues that the record does not support a factual finding of perjury. We review findings of fact that underlie sentencing decisions for clear error. United States v. Chapnick, 963 F.2d 224, 226 (9th Cir.1992).
 
 
 7
 Several agents testified regarding Gutierrez's participation in the heroin sale. At the time of his arrest, Gutierrez signed a statement admitting that he knew Cardenas was conducting a heroin sale and that he "helped him in the exchange." During the suppression hearing, Gutierrez stated that he pulled a plastic bag containing heroin out of his jacket pocket and handed it to Cardenas. At trial, however, Gutierrez testified that he had no knowledge that a drug transaction was taking place. He also denied that he made the admissions reflected in the written statement. Furthermore, he testified that it was Cardenas who removed the plastic bag from his jacket pocket, and indicated he did not recall testifying otherwise at the suppression hearing.
 
 
 8
 It is obvious from this conflicting evidence that someone was not telling the truth. The district court concluded it was Gutierrez who lied under oath, and the record demonstrates that this finding was not clearly erroneous.
 
 III.
 
 9
 Gutierrez contends the trial judge erred by denying his motion to suppress evidence obtained after agents searched his apartment. Although he concedes he gave his consent, he argues it was not knowingly and voluntarily given.
 
 
 10
 We review findings that a consent to search was voluntarily given for clear error. United States v. Kelley, 953 F.2d 562, 566 (9th Cir.1992). Voluntariness is determined by considering the totality of the circumstances surrounding the consent. Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973). We consider several factors in assessing the voluntariness of a consent, although none are dispositive. United States v. Castillo, 866 F.2d 1071, 1082 (9th Cir.1988). These factors include: (1) whether the defendant was in custody, (2) whether the arresting officers had their guns drawn, (3) whether the defendant was given Miranda warnings, (4) whether the defendant was told he had a right to withhold consent, and (5) whether the defendant was told a search warrant could be obtained. Id. "The fact that some of these factors are not established does not automatically mean that consent was not voluntary." Id.
 
 
 11
 In this case, these factors cut in the Government's favor. Although Gutierrez was in custody at the time he gave his consent and was not apparently told that a search warrant could be obtained, the arresting officers' guns were holstered, Gutierrez was given Miranda warnings twice--at the time of his arrest and again just before he provided his consent, and Gutierrez was informed that he had a right not to consent to the search. Moreover, the atmosphere surrounding Gutierrez's consent was calm. Gutierrez indicated he wanted to cooperate and told Agent Fuentes that he had obtained the heroin from his apartment. He also showed the officer where his apartment was located. When the officers discovered the door to the apartment was locked after Gutierrez had consented to the search, Gutierrez offered them the key. Furthermore, Gutierrez cooperated fully during the search of his apartment. The record demonstrates that the district court did not commit clear error when it found that Gutierrez knowingly and voluntarily consented to the search of his apartment.
 
 IV.
 
 12
 Gutierrez contends that the circumstances surrounding his signing of the statement at the DEA office "violate[ ] the fundamental sense of decency flowing through the fabric of due process interpretation within the context of the law of voluntariness of confessions," that the district court erred in denying the motion to suppress the statement, and that this court should declare his statement involuntary "as a matter of law" and accordingly reverse his conviction. Gutierrez does not contend that he was not advised of his Miranda rights, that his waiver of those rights was involuntary, or that he involuntarily signed the statement at issue. Rather, he essentially disputes the district court's finding that an agent correctly interpreted and read the statement to Gutierrez in Spanish before Gutierrez signed it. We review factual findings underlying a denial of a motion to suppress for clear error. United States v. Negrete-Gonzales, 966 F.2d 1277, 1282 (9th Cir.1992).
 
 
 13
 In this case, the district court had only the testimony of Gutierrez and the agents before it upon which to determine whether an agent read Gutierrez an accurate account of the English statement. The court credited an agent's testimony that his translation was "absolutely accurate word for word" and rejected Gutierrez's testimony to the contrary. We afford such credibility determinations "special deference." United States v. Aguirre, 994 F.2d 1454, 1457 n. 4 (9th Cir.), cert. denied, 114 S.Ct. 645 (1993). Gutierrez failed to demonstrate that the district court clearly erred in finding that the officer's translation was accurate.
 
 V.
 
 14
 The district court granted Cardenas a two-level adjustment for acceptance of responsibility. Cardenas contends that he is entitled to an additional one-level adjustment pursuant to section 3E1.1(b) of the United States Sentencing Guidelines (U.S.S.G.). The relevant Guideline provision states as follows:
 
 
 15
 (b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and the defendant has assisted authorities in the investigation or prosecution of his own misconduct by taking one or more of the following steps:
 
 
 16
 (1) timely providing complete information to the government concerning his own involvement in the offense; or
 
 
 17
 (2) timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently,
 
 
 18
 decrease the offense level by 1 additional level.
 
 
 19
 U.S.S.G. Sec. 3E1.1 (effective 11/1/92). We review the factual determination as to whether a defendant has accepted responsibility and is therefore entitled to a downward adjustment for clear error. See United States v. Rosales, 917 F.2d 1220, 1222 (9th Cir.1990) (noting that the determination as to whether a defendant has accepted responsibility and is therefore entitled to a downward adjustment is a question of fact); United States v. Chapnick, 963 F.2d 224, 226 (9th Cir.1992) (this court reviews factual findings at sentencing for clear error); see also United States v. Arias-Villanueva, 998 F.2d 1491, 1513 (9th Cir.), cert. denied, 114 S.Ct. 573 (1993) (two-level adjustments for acceptance of responsibility are reviewed for clear error); United States v. Donovan, 996 F.2d 1343, 1346 (1st Cir.1993) (three-level adjustments for acceptance of responsibility are reviewed for clear error).[1]
 
 
 20
 Cardenas contends that he has fulfilled the Guideline requirements to qualify for a three-level adjustment for acceptance of responsibility. His base offense level exceeded 16, and he contends that
 
 
 21
 [h]e notified authorities early of his intention and desire to enter a plea of guilty. His intention is unquestionable in light of his plea of guilty. He thereby gave the government the opportunity to avoid preparing for trial. The government chose not to avail itself of the opportunity. Whatever penalty follows the diminution in the efficient allocation of court resources should be borne by the government, not the defendant.
 
 
 22
 Cardenas also claims that this court's decision in United States v. Johnson, 956 F.2d 894 (9th Cir.1992) supports his position that he is entitled to a three-level adjustment despite the fact that he did not plead guilty until the morning of his trial.
 
 
 23
 In Johnson, several defendants were jointly tried and convicted of various drug offenses. Id. at 897. The defendants argued that they were entitled to a two-level adjustment for acceptance of responsibility despite the fact that their acceptance occurred after their trial. Id. at 903-04. The district court rejected the defendant's claims because it determined that their acceptance was not timely as required by the Guidelines. Id. at 903. We reversed, holding that the district court's refusal to grant the adjustment for acceptance of responsibility was erroneous. Id. at 905. We explained that because the Government refused to accept a plea from any defendant unless all of the defendants pled guilty, none of the defendants were individually capable of accepting responsibility any earlier than they did, and it was therefore "inappropriate to deny a reduction for responsibility based solely on the timing of the acceptance." Id. at 904-05.
 
 
 24
 In the present case, by contrast, the Government's resistance to accepting a plea offer was motivated by Cardenas' intention to "falsely exculpate" Gutierrez during Gutierrez's trial, not merely by a desire to acquire a package plea agreement with Cardenas and Gutierrez. Moreover, in Johnson, no defendant "could have pleaded guilty without all co-conspirators' unlikely decision to do the same." Id. at 905. Here, the Government did not preclude Cardenas from entering his guilty plea, or from otherwise reaching a plea agreement. Cardenas cannot excuse the fact that he did not enter his guilty plea until the day of his trial on the basis that the Government resisted entering into a plea agreement with a defendant who intended to testify falsely at his codefendant's trial. Cardenas failed to satisfy the criteria in U.S.S.G. Sec. 3E1.1(b)(2), requiring timely notification of an intention to plead guilty.
 
 
 25
 Additionally, the Government correctly notes that Cardenas did not satisfy U.S.S.G. Sec. 3E1.1(b)(1), which requires that a defendant provide timely information concerning his own involvement in the offense, because Cardenas testified at Gutierrez's trial that the information he provided to the Government when he was arrested was false. The district court's decision to deny the motion for a three-level adjustment for acceptance of responsibility was not clearly erroneous.
 
 VI.
 
 26
 Cardenas contends that the district court erroneously enhanced his sentence by two levels because he played a leadership role in the offense. He further asserts that the district court erred because it failed to make specific findings concerning his alleged leadership role. We review the district court's factual findings underlying this sentencing decision for clear error. United States v. Chapnick, 963 F.2d 224, 226 (9th Cir.1992).
 
 
 27
 Section 3B1.1 of the Sentencing Guidelines states as follows:
 
 
 28
 Based on the defendant's role in the offense, increase the offense level as follows:
 
 
 29
 (a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.
 
 
 30
 (b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.
 
 
 31
 (c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.
 
 
 32
 U.S.S.G. Sec. 3B1.1.
 
 
 33
 Cardenas, citing no legal authority, argues that
 
 
 34
 [i]t is inconsistent to on one hand accept the plea as made by the defendant and on the other hand adjust his sentence for his alleged leadership role with respect to the codefendant. The sentencing court recognized the inconsistency but nevertheless apparently based his findings at least in part upon the defendant's relationship to his codefendant.
 
 
 35
 He further argues that "[e]ven if the court could properly consider the relationship of the codefendants, their conduct does not justify a finding of a leadership role." According to Cardenas, "the facts of this case could point just as well to the codefendant as a leader." We disagree.
 
 
 36
 The record shows that Cardenas negotiated the drug deal with the confidential informant and the undercover agents, organized the events which resulted in the heroin sale, and directed Gutierrez to retrieve the heroin from Gutierrez's apartment. Cardenas also told the officers that he could provide heroin for future drug sales. After reviewing the testimony provided at Gutierrez's trial, the information contained in the presentence report, and argument presented at sentencing, the district court determined that Cardenas' conduct warranted a two-level increase for his leadership role. The court specifically stated:
 
 
 37
 I am constrained to rule on the basis of everything I've heard here that the assessment of the presentence officials that the leadership here was justified, is affirmed; I do hereby affirm that. In these circumstances, vis-a-vis the people around him, whoever they may be, I find that [Cardenas] was acting in a leadership capacity. To the extent that I'm permitted to look at the relationship with the co-defendant [Gutierrez] in the case, that is clearly so.
 
 
 38
 There was ample evidence in the record to support the district court's determination that Cardenas was a leader in the offense. Therefore, the court's decision to enhance Cardenas' sentence by two levels was not clearly erroneous.
 
 
 39
 Cardenas cites this court's decision in United States v. Brady, 928 F.2d 844, 848 (9th Cir.1991) for the proposition that "[i]n making a determination of an adjustment under the sentencing guidelines the trial court should articulate its reasons and justifications for the adjustment, notify the defendant before the sentencing hearing of its tentative findings and hold a hearing upon the issues." In Brady, the defendant was convicted of voluntary manslaughter and assault with a dangerous weapon based upon conduct which occurred on an Indian reservation. Id. at 845-46. The district court imposed a sentence which exceeded the recommended range contained in the presentence report. Id. at 846. We vacated Brady's sentence because he was not notified of all the factors which were ultimately relied upon by the court in advance of the sentencing hearing. Id. at 847.
 
 
 40
 This matter is readily distinguishable from the situation in Brady. The presentence report recommended a two-level increase for Cardenas' leadership role in the offense. Cardenas submitted his written objections regarding the enhancement to the court. He also argued at the sentencing hearing that he should not be assessed a leadership enhancement. The court relied upon all of the information submitted, and determined that the two-level enhancement was warranted.
 
 
 41
 Unlike the situation in Brady, the trial court in this case specifically relied upon information that was provided to Cardenas, information Cardenas had an opportunity to respond to before and during the sentencing hearing. The district court did not clearly err in assessing a two-level sentencing enhancement for Cardenas' role as a leader.
 
 VII.
 
 42
 Cardenas, citing no legal authority to support his position, contends that the district court erroneously enhanced his sentence by two levels for obstruction of justice. According to the Sentencing Guidelines, "[i]f the defendant wilfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels." U.S.S.G. Sec. 3C1.1. Application Note 3(b) indicates that the commission of perjury represents an obstruction of justice under U.S.S.G. Sec. 3C1.1. We review the district court's findings regarding obstruction of justice for clear error. See United States v. Chapnick, 963 F.2d 224, 226 (9th Cir.1992) ("Any findings of fact that underlie the district court's sentencing decision are reviewed for clear error.") (citation omitted).
 
 
 43
 Cardenas contends that his "testimony and statement's [sic] corresponded closely with the testimony of other witnesses at the scene of the delivery of the heroin." Cardenas acknowledges that his trial testimony differed from that of other witnesses, but explains that this difference resulted from the "conclusions that he drew from the same observable facts." Furthermore, he explains "[t]hat his opinion and recollection should differ from other witnesses is to be expected."
 
 
 44
 The district court disagreed with Cardenas' characterization of his testimony. As noted earlier, during trial the court stated that "some people might find [Cardenas' testimony] one of the biggest cock and bull stories ever floated in the State of Arizona." Moreover, at the sentencing hearing, the district court enunciated the belief that Cardenas perjured himself:
 
 
 45
 I'm also very, very troubled by the conclusion that I drew at the end of the trial, as obviously did the jury, that Mr. Beltran-Cardenas had taken the witness stand and committed perjury in an endeavor to exculpate his co-defendant....
 
 
 46
 I feel that the demands of our justice system require that I grant the Government's application ... and find that there has been a deliberate obstruction of justice here which warrants increasing the level by two points....
 
 
 47
 This credibility determination is entitled to "special deference" by this court, United States v. Aguirre, 994 F.2d 1454, 1457 n. 4 (9th Cir.), cert. denied, 114 S.Ct. 645 (1993). Cardenas has failed to demonstrate that the district court's finding that he committed perjury was clearly erroneous.
 
 
 48
 AFFIRMED.
 
 
 
 *
 Honorable Stephen V. Wilson, United States District Judge for the Central District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Citing United States v. Fine, 975 F.2d 596, 599 (9th Cir.1992) (en banc), Cardenas contends that the appropriate standard of review is de novo. In Fine, we stated that "[t]he legality of a sentence is reviewed de novo," adding further that "[w]e accept the district court's findings of fact unless they are clearly erroneous, and give due deference to the district court's application of the guidelines to the facts." Id. at 599 (citation omitted). Contrary to Cardenas' contention, we are not reviewing the legality of his sentence. Rather, we are reviewing the district court's factual finding that Cardenas was ineligible for a three-level adjustment for acceptance of responsibility