[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-10882
Non-Argument Calendar
_____

D.C. Docket No. 5:08-cr-00040-RS-LB-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHRISTOPHER SHAUN LAMAR,
a.k.a. Bleed,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(April 2, 2014)

Before TJOFLAT, JORDAN, and FAY, Circuit Judges.

PER CURIAM:

Christopher Shaun Lamar appeals his conviction for (1) conspiracy to distribute and to possess with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(b)(1)(A)(ii), (b)(1)(D), and (2) possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a), (b)(1)(B)(ii) and 18 U.S.C. § 2.  We affirm.

## BACKGROUND

On January 18, 2007, a police officer in Panama City, Florida, stopped a vehicle for an improper license plate.  Neither driver Martin Moore nor passenger Marlin Jones was authorized to operate the rented vehicle, and the rental agency requested that its property be returned.  The officer asked Moore and Jones to remove personal items, which revealed a package in the trunk that appeared to be cocaine.  Moore and Jones subsequently were arrested for possession of cocaine, and the investigation was turned over to the Drug Enforcement Administration ("DEA").

A DEA interview of Jones elicited he had obtained the cocaine from "Shaun," also known as "Bleed," in Lithonia, Georgia.  The description of a Lithonia residence and vehicle were provided to Atlanta DEA.  After learning the registered owner of the vehicle, DEA obtained a driver's license photograph of Christopher Shaun Lamar, which was shown to Jones, who identified Lamar as the person from whom he had obtained the cocaine.  On November 5, 2008, Lamar

2

was indicted for conspiracy with Jones, Moore, and others to distribute cocaine in the Northern District of Florida.

Lamar had learned of the arrest of his co-conspirators in January 2007. Other co-conspirators discussed the arrests with Lamar and the likelihood those arrested would tell authorities about the drug conspiracy.  Lamar appeared nervous, and he told his co-conspirators to obtain disposable telephones.  Although Lamar's mother was contacted by law enforcement following his indictment, she told authorities she had no way to contact him.

When DEA had no success in locating Lamar, the United States Marshals Service took over the fugitive investigation in March 2009.  Since contacts with Lamar's family members had been unsuccessful, no further contacts were made, because such efforts could have made Lamar more evasive.  The Marshals Service investigated comprehensive computerized databases, including warrants, criminal history, residences, co-occupant information, employment, credit checks, driver's license information, property tax records, utility records, and taxes, which resulted in an 80-to-90-page report.[1]  Those checks were done repeatedly in March 2009, July 2009, October 2009, December 2010, June 2011, September 2011, and February 2012.  The checks, however, did not produce Lamar's telephone number

---

[1] Lamar had made little money in 2006 from working at his brother's tire store and operating a music studio in the basement, where he lived.  Lamar did not work for an employer or file a tax return after 2006.  While Lamar performed as a rap musician at Atlanta night clubs, his web site listed his name only as "Judge the Ruler."

3

or place of employment. His primary address was shown as that of an aunt and uncle in Decatur, Georgia, where he had never lived. His secondary address was in Lithonia, Georgia, which he had left during foreclosure proceedings in 2007. Defense counsel conceded Lamar did not have a stable address, when authorities were looking for him.

In May 2012, Lamar was stopped for a traffic violation, whereupon the active warrant from the Northern District of Florida was revealed. Discovery of marijuana and a firearm in a subsequent inventory search caused Lamar to be arrested under additional Georgia charges.[2]

Lamar first appeared in the Northern District of Florida on June 7, 2012. He moved to dismiss his two-count indictment for conspiracy to distribute and possess cocaine base and marijuana, because of an alleged speedy-trial violation for the 42-months delay between his indictment and arrest. The district judge conducted an evidentiary hearing on Lamar's motion to dismiss on October 18, 2012. Analyzing the delay under the four factors in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 2192 (1972), the judge denied the motion after concluding the

---

[2] When arrested on December 6, 2005, Lamar stated his name was Leonard Holloway, a childhood friend, who had lived across the street from Lamar. Thinking him to be Lamar, Atlanta authorities subsequently arrested the real Leonard Holloway. The mistake was discovered when Lamar's booking photographs showed he was not Holloway. Because this arrest was under Holloway's name, it had not been revealed in the search for former arrests for Lamar.

4

government had provided adequate reasons for the delay, and Lamar had not demonstrated actual prejudice.

A jury found Lamar guilty on both counts of the indictment. The district judge sentenced him to 293 months of imprisonment on each indictment count to run concurrently. On appeal, Lamar argues his Sixth Amendment right to speedy trial was violated, when the district judge did not grant his motion to dismiss the indictment against him.

## DISCUSSION

The Sixth Amendment to the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial." U.S. Const. amend. VI. Whether the government deprived a defendant of his constitutional right to a speedy trial is a mixed question of fact and law. *United States v. Villarreal*, 613 F.3d 1344, 1349 (11th Cir. 2010). We review a district judge's factual findings for clear error and legal conclusions de novo. *Id.* "A factual finding is clearly erroneous only if, after we review the evidence, we are left with the definite and firm conviction that a mistake has been committed." *Id.* (citation and internal quotation marks omitted). We accord substantial deference to a district judge as factfinder in credibility determinations regarding witness testimony. *Id.*

In *Barker*, the Supreme Court established a four-part balancing test to determine whether delay in a defendant's trial caused a deprivation of the constitutional right to a speedy trial: "(1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) the actual prejudice borne by the defendant." *Id.* at 1350; *Barker*, 407 U.S. at 530, 92 S. Ct. at 2182. Regarding the first factor, delay between indictment and arrest exceeding one year triggers a *Barker* speedy-trial analysis. *Doggett v. United States*, 505 U.S. 647, 651-52 & n.1, 112 S. Ct. 2686, 2690-91 & n.1 (1992); *see United States v. Dunn*, 345 F.3d 1285, 1296 (11th Cir. 2003) (recognizing "delay is considered presumptively prejudicial as it approaches one year"). There were 42 months between Lamar's indictment on November 5, 2008, and his arrest on May 8, 2012. Although this delay requires the speedy-trial analysis, it is substantially less than the eight-and-one-half-year delay in *Doggett*. *See Villarreal*, 613 F.3d at 1355 (concluding no speedy-trial violation, although nearly 10-year delay from indictment to arrest, which weighed against convicted defendant).

Regarding the second *Barker* factor, the government took reasonable and diligent steps to locate Lamar, including running comprehensive database checks and speaking with his mother, who was uncooperative. Moreover, the evidence suggests Lamar knew he likely was being investigated and took efforts to remain inconspicuous. According to testimony from the hearing on the motion, several of

6

Lamar's co-conspirators already had been arrested, following which Lamar and another co-conspirator discussed whether the arrestees were cooperating with the government. The district judge did not clearly err in finding the second *Barker* factor was neutral; even if that factor should have weighed against the government, it did not weigh heavily against the government. *See Barker*, 407 U.S. at 531, 92 S. Ct. at 2192 (noting that negligent acts by the government are more neutral and should not be weighed as heavily as acts done in bad faith). Lamar's choice to lead a life making him extraordinarily difficult to find, was, at worst, a neutral reason for delay. [3]

The third *Barker* factor, Lamar's assertion of his right to speedy trial relates to his reason for the delay. Lamar first appeared in the Northern District of Florida on June 7, 2012; he asserted his speedy-trial right in his motion to dismiss filed on August 24, 2012, 78 days later. Although Lamar was aware his co-conspirators were talking to authorities shortly after their January 2007 arrests, he did not contact authorities or otherwise assert his speedy-trial right. Instead, he advised

---

[3] The government's efforts to locate Lamar are notably distinguishable from the lack of effort made in *Doggett*. In that case, the government did almost nothing in the seven years between September 1981, when Doggett was in custody in Panama, and in September 1988, when the Marshals Service ran a credit check and immediately located him. 505 U.S. at 648-50, 112 S. Ct. at 2689-90. In the relevant years, Lamar had no fixed residence, no stable employment, no utilities listed to him, no credit accounts, no motor vehicle registered to him, did not register to vote, did not put his name on either owned or rented properties, did not pay income taxes, and had his driver's license under addresses where he did not live. His place of business was an internet site, which did not include his name, but an alias he had acquired after the arrest of the government's witnesses.

his co-conspirators to obtain disposable telephones and to change their telephone numbers. The arrest and prosecution of his cousin in 2008 did not cause Lamar to assert his speedy-trial right. The contact of his family members by law enforcement soon after his indictment did not cause him to assert his speedy-trial right. The arrest of a childhood friend in February 2010 in the mistaken belief he was Lamar did not cause Lamar to assert his speedy-trial right.

"The Speedy Trial Clause primarily protects those who assert their rights, not those who acquiesce in the delay—perhaps hoping the Government will change its mind or lose critical evidence." *United States v. Aguirre*, 994 F.2d 1454, 1457 (9th Cir. 1993). Acquiescence in delay causes the third factor, "invocation of the right to a speedy trial . . . [to] be weighed heavily against him." *Doggett*, 505 U.S. at 653, 112 S. Ct. at 2691. Lamar's deliberately avoiding apprehension would have been supported by the record and would not have been clearly erroneous. *See Villarreal*, 613 F.3d at 1349. The district judge, however, made a lesser finding that the assertion factor was neutral, which was not clearly erroneous, because Lamar asserted his right to a speedy trial approximately three months after he was arrested. *See United States v. Ingram*, 446 F.3d 1332, 1338 (11th Cir. 2006) (weighing the third factor against the government where the defendant asserted his right to a speedy trial soon after learning of the indictment and arrest warrant).

Because the first three *Barker* factors do not uniformly weigh heavily against the government, however, Lamar was required to demonstrate actual prejudice, which he failed to do. *Dunn*, 345 F.3d at 1296.[4]  Although he argues that the government's negligence in trying to locate him, combined with the length of the delay, eliminated the need for particularized prejudice in his case under our rationale in *United States v. Clark*, 83 F.3d 1350, 1353 (11th Cir. 1996), his argument fails.  In *Clark*, we held proof of particularized prejudice may not be required when a substantial delay is attributable solely to government negligence. *Clark*, 83 F.3d at 1353-54.  Because any government negligence in creating the delay in this case was minimal, if it existed at all, Lamar's reliance on *Clark* is misplaced.  The district judge correctly denied Lamar's motion to dismiss the indictment, based on denial of his right to speedy trial.

**AFFIRMED.**

---

[4] Concerning the fourth *Barker* factor, on appeal, Lamar argues only that he was not required to demonstrate actual prejudice; thus, he has abandoned any argument that he suffered actual prejudice. *See United States v. Jernigan*, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003) (recognizing an appellant abandons a claim not raised in the initial brief).