NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

FEB 9 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 18-50333 |
| Plaintiff-Appellee, | D.C. No. 2:04-cr-00476-SJO-1 |
| v. | |
| MARK ELDON WILSON, AKA Marc Eldon Wilson, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Central District of California
S. James Otero, District Judge, Presiding

Argued and Submitted January 14, 2021
Pasadena, California

Before: CALLAHAN and WATFORD, Circuit Judges, and RAKOFF,[**] District Judge.

Mark Wilson was convicted following a jury trial of multiple counts of mail

and wire fraud. On appeal, he contends that his convictions should be reversed

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

based on an alleged violation of his Sixth Amendment right to a speedy trial and several claims of evidentiary error at trial. We affirm.

**1.** Wilson first argues that the district court erred by concluding that his Sixth Amendment right to a speedy trial attached only when the indictment was filed in April 2004, rather than when the complaint was filed in June 2000. We recognize that a split exists within our circuit over whether a complaint is sufficient to trigger the protections of the speedy trial right. *Compare Northern v. United States*, 455 F.2d 427, 429 (9th Cir. 1972) (per curiam), *and United States v. Terrack*, 515 F.2d 558, 559 (9th Cir. 1975), *with Favors v. Eyman*, 466 F.2d 1325, 1327–28 (9th Cir. 1972), *and Arnold v. McCarthy*, 566 F.2d 1377, 1382 (9th Cir. 1978). But even assuming that Wilson's right to a speedy trial attached upon the filing of the complaint, his claim still fails.

We evaluate whether Wilson's right to a speedy trial was violated by balancing the four factors set out in *Barker v. Wingo*, 407 U.S. 514 (1972): (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted his rights; and (4) whether the defendant was prejudiced by the delay. *Id.* at 530.

With respect to the first factor, approximately six-and-a-half years elapsed between the filing of the complaint and the government's extradition request. That period is sufficiently lengthy to trigger analysis of the remaining *Barker* factors. *See United States v. Gregory*, 322 F.3d 1157, 1161–62 (9th Cir. 2003).

As for the second *Barker* factor, part of the delay may be attributable to the government's lack of diligence in preparing the indictment and extradition request. But it is also true that Wilson contributed to the delay, for he knew of the charges against him potentially as early as 2001 but at the latest by 2003. He could have at that time "ended the delay and avoided any prejudice caused by the passage of time" by voluntarily presenting himself to United States authorities. *See United States v. Aguirre*, 994 F.2d 1454, 1457–58 (9th Cir. 1993). Instead, Wilson initiated lengthy court battles in Canada to prevent the transmission of evidence to the United States, and he forced the government "to run the gauntlet of obtaining formal extradition." *See United States v. Manning*, 56 F.3d 1188, 1195 (9th Cir. 1995). Because Wilson knew of the charges against him years before the government sought his extradition in 2007, the third *Barker* factor, involving assertion of the right to a speedy trial, "weigh[s] heavily against him." *See Doggett v. United States*, 505 U.S. 647, 653 (1992). And because Wilson's failure to assert his speedy trial right contributed significantly to the delay, he is not entitled to a presumption of prejudice under *Barker*'s fourth factor. *See Aguirre*, 994 F.2d at 1458.

Without the benefit of a presumption of prejudice, Wilson bears the heavy burden of showing actual prejudice. *See id.* at 1457. The actual prejudice test is applied "stringently"—the proof of prejudice must be "definite and not

speculative." *Manning*, 56 F.3d at 1194. Wilson claims that he was prejudiced by the delay because the government gained two cooperating witnesses, some electronic evidence was lost, and two of the government's witnesses exhibited lapses in memory that purportedly prevented Wilson from impeaching them. However, neither of the cooperating witnesses Wilson identifies testified at trial, and one of them actually died prior to trial, prejudicing the government rather than Wilson. He has also failed to identify anything from the spoliated electronic evidence that would have aided his defense. Wilson's theory as to how he would have been able to impeach the government's witnesses, and how that would have affected the outcome of the trial, is at best speculative.

Given Wilson's contributions to the delay and his inability to show actual prejudice, the *Barker* factors collectively weigh in the government's favor. The district court therefore properly denied Wilson's motion to dismiss the indictment.

**2.** As for Wilson's claims of evidentiary error, he must show that the district court abused its discretion (or committed plain error where Wilson failed to object below) in order to prevail. He has not made such a showing. Agent Healy did not impermissibly opine on the ultimate legal issue by using the term "fraud" in his testimony. As this court has noted, "[i]t is sometimes impossible for an expert to render his or her opinion on a subject without resorting to language that recurs in the applicable legal standard." *United States v. Diaz*, 876 F.3d 1194, 1998 (9th

Cir. 2017).  Nor did Agent Healy improperly "spoon-feed" the government's interpretation of the evidence to the jury—he merely offered *modus operandi* testimony that this court has consistently held permissible.  *See United States v. Gil*, 58 F.3d 1414, 1422 (9th Cir. 1995).  The district court also did not abuse its discretion by admitting the "Gribble Tapes," particularly after having independently verified their reliability by listening to them and comparing their contents to testimony given at trial.  The FTC press release, the email from Tony Brown, and testimony about customer complaints were properly admitted for the non-hearsay purpose of showing Wilson's state of mind—specifically, his knowledge that his companies were engaging in conduct that was considered fraudulent.  Finally, Wilson concedes that, under binding circuit precedent, the district court acted within its discretion in reopening the evidence after the defense's Rule 29 motion.  *See United States v. Suarez-Rosario*, 237 F.3d 1164, 1167 (9th Cir. 2001).

**AFFIRMED.**