UNITED STATES of America,
Plaintiff–Appellee,

v.

TANH HUU LAM, Defendant–
Appellant.

No. 99–10463.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 30, 2000

Filed June 4, 2001

Judy Clarke, Executive Director, Federal Defenders of Eastern Washington and Idaho, Spokane, Washington; Quin Denver, Federal Defender, Mary French, Asst. Federal Defender, John P. Balazs, Asst. Federal Defender, Sacramento, California, for the defendant-appellant.

Paul L. Seave, United States Attorney, Kenneth J. Melikian, Assistant United States Attorney, R. Steven Lapham, Assistant United States Attorney, Sacramento, California, for the plaintiff-appellee.

Before: B. FLETCHER, O'SCANNLAIN and RONALD M. GOULD, Circuit Judges.

BETTY B. FLETCHER, Circuit Judge:

This is a direct appeal from a federal conviction for arson resulting in death, in violation of 18 U.S.C. § 844(i). The appellant, Tanh Huu Lam, raises two types of claims: First, he argues that his constitutional and statutory rights to a speedy trial were violated. Second, Lam claims that the government violated his due process and double jeopardy rights by knowingly presenting false testimony and committing other forms of prosecutorial misconduct during his trial. For the reasons elaborated below, we reject each of these claims and affirm the conviction.

### I.

Lam is currently serving a life sentence. He pleaded guilty to arson resulting in death and aiding and abetting more than a year after his trial ended in a hung jury. As part of the plea agreement, Lam admitted hiring a man named Trung Pham to kill his best friend, Tri Tran, whom he blamed for dating and breaking up his marriage to his ex-wife, Huyen Nguyen. Following two failed attempts at shooting Tran, Trung and two accomplices, Quoc Pham and Tu Troung, proceeded to set fire to the house in Carmichael, California, in which Tran, his brother Duc Tran, his

sister Ngoc Tran, and her three children were living. Hien Tran, the nine year-old daughter of Ngoc Tran, died as a result of the fire. Duc Tran and Tin Nguyen, another child of Ngoc Tran, suffered severe burns.

Lam was arrested on January 9, 1997. He made his initial court appearance in federal court in Sacramento on January 17, 1997. The government filed an indictment on January 30, 1997, charging Lam with one count of arson resulting in death and aiding and abetting. He was arraigned on this charge on February 3, 1997.

At five status conferences held between February 5, 1997, and November 19, 1997, the district court granted a series of continuances, with exclusions of time for Speedy Trial Act ("STA") purposes based on the "ends of justice" provision of 18 U.S.C. § 3161(h)(8)(A). Although his trial attorney stipulated to each continuance, Lam never signed these stipulations or any document purporting to waive his right to a speedy trial. Beginning in June 1997, Lam wrote letters to the Assistant United States Attorney ("AUSA"), the magistrate judge, and then the district court expressing, among other things, his desire for a speedy trial. Altogether, Lam sent out eight letters between June 1997 and February 1998, five of which were addressed to the district court. Lam also expressed his desire for a speedy trial at an ex parte hearing on November 19, 1997, as well as at a status conference on January 21, 1998.

The trial, which finally commenced on March 24, 1998, lasted twenty-six days. During the trial, law enforcement officers testified to finding gasoline cans in Lam's house. When they questioned Lam about them, he claimed that he had purchased them over two years before the search. Given that some of the cans had only been manufactured within the past year, the prosecution cited Lam's statements as evidence of his dishonesty. Lam's ex-wife also testified that before the fire Lam had threatened to use gasoline to burn Tran's house down and to "cause his family pain," given that Tran had caused Lam's family pain. Huyen Nguyen further testified that on one occasion Lam had shocked her twice with a stun gun. The case was submitted to the jury on May 1, 1998. Seven days later, the court granted a mistrial due to a hung jury.

Lam was subsequently reindicted, and on December 18, 1998, the government filed a notice of intent to seek the death penalty. Between May and September of 1998, Lam wrote four more times to the trial judge requesting a speedy trial. He also wrote six letters to various judges of this circuit between June 1998 and August 1998. On April 30, 1999, Lam filed motions to dismiss the indictment with prejudice based on alleged violations of his constitutional and statutory rights to a speedy trial, as well as for violations of his rights under the Due Process and Double Jeopardy Clauses of the Fifth Amendment. Arguments on these motions were heard on June 16, 1999, at which time the motions were denied. Nine days later, Lam entered into a plea agreement following the capture of Quong Pham, who agreed to cooperate with the government and testify against Lam.

Lam now argues on appeal that the district court erred in denying his motion to dismiss the indictment with prejudice, because the duration of his pretrial incarceration violated his Sixth Amendment speedy trial right. He also contends that the district court improperly tolled three periods for which continuances had been granted prior to the trial, each of which should have counted towards the STA's seventy-day time limit. The government, meanwhile, argues that Lam was not deprived of his constitutional speedy trial

right given that all of the continuances were initiated by, stipulated to, and granted for his benefit through his trial counsel, and that Lam waived his STA claim by failing to move to dismiss until after the trial.

As part of his plea agreement, Lam reserved the right to appeal the district court's denial of his speedy trial claims, as well as the court's denial of his motion to dismiss for violations of his due process and double jeopardy rights.

## II.

The district court had jurisdiction of this case under 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291.

■ The district court's denial of Lam's motion to dismiss based upon the Sixth Amendment right to a speedy trial is reviewed de novo. *United States v. Beamon*, 992 F.2d 1009, 1012 (9th Cir.1993). Likewise, the district court's application of the STA is reviewed de novo. *United States v. Hall*, 181 F.3d 1057, 1061 (9th Cir.1999). The district court's findings of fact are reviewed for clear error. *Beamon*, 992 F.2d at 1012; *United States v. Ramirez–Cortez*, 213 F.3d 1149, 1153 (9th Cir.2000).

## III.

### A. Constitutional Speedy Trial Claim

■ The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy ... trial." Such a right is fundamental and exists not just to ensure "that all accused persons be treated according to decent and fair procedures," *Barker v. Wingo*, 407 U.S. 514, 519, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), but also because "there is a societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused." *Id.* at 519, 92 S.Ct. 2182.[1]

■ In assessing the merits of a claimed violation of the Sixth Amendment speedy trial right, courts are to conduct a balancing test involving four separate factors: the length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. *Barker*, 407 U.S. at 529, 92 S.Ct. 2182.[2] Thus, we must determine "whether [the] delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result." *Doggett v. United States*, 505 U.S. 647, 651, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992).[3] Significantly, in the

---

1. Notably, the right to a speedy trial can be waived "if delay is attributable to the defendant ... under standard waiver doctrine." *Id.* at 529, 92 S.Ct. 2182. Thus, we have held that "when the defendant seeks to avoid detection by American authorities and any post-indictment delay can be attributed to him, he waives the right to a speedy trial." *United States v. Sandoval*, 990 F.2d 481, 483 (9th Cir.1993) (internal quotations omitted). However, courts are not to infer a waiver from mere silence on the part of a defendant in demanding a speedy trial; rather, such silence "is [but] one of the factors to be considered in an inquiry into the deprivation of the right." *Id.* at 528, 92 S.Ct. 2182.

2. Applying the four-factor test, the *Barker* Court found no Sixth Amendment violation where the defendant in a murder case did not request a speedy trial and had not been seriously prejudiced by the more than five-year delay between his arrest and trial, even though more than four years of the delay were attributable to the prosecutor's inability to try a coindictee and get him to testify at the defendant's trial. 407 U.S. at 533–36, 92 S.Ct. 2182.

3. In *Doggett*, the Court held that a delay of eight and one-half years between indictment and arrest on charges of conspiracy to import cocaine, where the government had been neg-

words of the *Barker* Court, "We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process." *Barker*, 407 U.S. at 533, 92 S.Ct. 2182.

Applying the first *Barker* factor to this case, it is readily apparent that the length of the delay exceeded the threshold minimum [4] beyond which we presume prejudice to the defendant. As the Court stated in *Doggett*, "Depending on the nature of the charges, the lower courts have generally found post-accusation delay 'presumptively prejudicial' at least as it approaches one year." *Id.* at 652 n. 1, 112 S.Ct. 2686. Notably, within this circuit, we have found that a six-month delay constitutes a "borderline case." *See United States v. Valentine*, 783 F.2d 1413, 1417 (9th Cir.1986) (involving a single count of firearms possession by a convicted felon); *cf. United States v. Simmons*, 536 F.2d 827 (9th Cir. 1976) (involving a two-count indictment for forging and uttering a U.S. Treasury check).[5] Here, roughly fourteen and one-half months passed from the date of Lam's arrest on January 9, 1997,[6] until the start of his trial on March 24, 1998.

However, in the words of the *Barker* Court, "because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case. To take but one example, the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." 407 U.S. at 530–31, 92 S.Ct. 2182 (footnote omitted); *see also Doggett*, 505 U.S. at 652 n. 1, 112 S.Ct. 2686 (stating that the significance of any delay necessarily "[d]epend[s] on the nature of the charges"). As the district court correctly noted, the nature of the charges against Lam were significantly more serious and complex than those at issue in *Valentine* or *Simmons*, in that they required considerable scrutiny of physical and circumstantial evidence, substantial cross-examination of expert witnesses, and potentially involved the death penalty. Given these facts, we find that the delay in Lam's trial did not greatly exceed the threshold needed to trigger judicial examination. *Cf. Barker* (holding that a greater than five-year delay between arrest and trial did not amount to a speedy trial violation in light of other factors); *Doggett* (holding that an

---

ligent in pursuing the defendant and the defendant was unaware of the indictment, created a strong presumption of prejudice that was not rebutted by the government and therefore amounted to a violation of the defendant's speedy trial right. 505 U.S. at 657–58, 112 S.Ct. 2686.

4. In *Doggett*, 505 U.S. at 651–52, 112 S.Ct. 2686, the Court reasoned that only if the delay is "presumptively prejudicial" is there a need to inquire into the other factors, "since, by definition, [a defendant] cannot complain that the government has denied him a 'speedy' trial if it has, in fact, prosecuted him with customary promptness."

5. *Cf. United States v. Beamon*, 992 F.2d 1009, 1013 (9th Cir.1993) (citing *United States v. Vassell*, 970 F.2d 1162, 1164 (2d Cir.1992), for the proposition that there is a general consensus in the courts of appeals that eight months constitutes the threshold minimum).

6. In *United States v. MacDonald*, 456 U.S. 1, 7, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982), the Court stated that "[i]n addition to the period after indictment, the period between arrest and indictment must be considered in evaluating a Speedy Trial Clause claim." Thus, analysis of Lam's constitutional claim properly begins with the date of his arrest.

eight and one-half year delay between indictment and arrest violated the Speedy Trial Clause in light of other factors); *United States v. Aguirre*, 994 F.2d 1454 (9th Cir.1993) (holding that a defendant's speedy trial right was not violated by a five-year delay between his indictment and arrest, where the government had conducted a reasonably diligent investigation to find him, and the defendant knew that charges against him were pending but did not advise authorities of his whereabouts); *Beamon*, 992 F.2d at 1009 (finding that delays of seventeen and twenty months between the indictment and arrest of two accomplices on cocaine distribution charges, when assessed in light of the other *Barker* factors, did not violate the Speedy Trial Clause); *United States v. Shell*, 974 F.2d 1035 (9th Cir.1992) (holding that a six-year delay between indictment and arrest due to government negligence, for which the government could offer no evidence to rebut the presumption of prejudice, resulted in a violation of the defendant's speedy trial right).

Although the length of the delay militates slightly in Lam's favor, we find that the second *Barker* criterion weighs heavily against him. The district court found that the reason for the delay in Lam's trial rested squarely on the shoulders of Lam's court-appointed trial counsel, Jeffrey Staniels,[7] and not upon the government.[8] Accordingly, the court found that "[t]he second [*Barker*] factor weighs overwhelming (sic) against Lam," since "each and every [continuance] w[as] asked for by Lam's

defense counsel so that he could do his job." We agree.

Staniels repeatedly stipulated in open court to the trial's complexity and the need to prepare for what was potentially a death penalty case as reasons for seeking continuances. For example, upon having been notified by the AUSA at the arraignment that the government might be seeking the death penalty, Staniels averred at the initial case status conference that "the matter is complex" given "the nature of the charge and the initial discussions I've had with [the AUSA] about discovery and those sorts of things," and subsequently sought a continuance to allow for adequate time for defense preparation. At the next status conference on April 9, 1997, Staniels again sought a continuance on the grounds that the case was complex and required extensive preparation: "because this is a potential death penalty case, until it's said otherwise, we're preparing in that fashion. The preparation of penalty phase stuff is itself à complicated process...." Similar stipulations as to complexity and defense counsel's need to prepare, as well as the pendency of various motions, were made at a status conference on May 14, 1997. Finally, at status conferences on August 13, 1997 and November 19, 1997, Staniels stipulated to additional continuances based on pending motions and scheduling conflicts with his other cases.

◼ In attributing responsibility to Lam's counsel, we also find under the facts of this case that such responsibility right-

---

7. Staniels, Assistant Federal Defender, was appointed counsel from the Federal Defenders Office of Eastern District of California.

8. Although Lam contends that the government contributed to the trial delay by dragging its feet on certain discovery requests, and that the government should be held accountable for the fact that his court-appointed federal defender was so overburdened, *cf.*

*Coe v. Thurman*, 922 F.2d 528 (9th Cir.1990), he does not claim that the government intentionally sought an advantage or otherwise manifested bad faith through dilatory behavior. Such conduct, if proven, would potentially weigh decisively against the government. *Barker*, 407 U.S. at 531 & n. 32, 92 S.Ct. 2182.

fully accrues to Lam. *See United States v. Guerra de Aguilera,* 600 F.2d 752, 753 (9th Cir.1979) ("Litigants are generally bound by the conduct of their attorneys, absent egregious circumstances."); *cf. Taylor v. Illinois,* 484 U.S. 400, 417–18, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988) ("The argument that the client should not be held responsible for his lawyer's misconduct strikes at the heart of the attorney-client relationship. Although there are basic rights that the attorney cannot waive without the fully informed and publicly acknowledged consent of the client, the lawyer has—and must have—full authority to manage the conduct of the trial. The adversary process could not function effectively if every tactical decision required client approval.") Significantly, notwithstanding his letters requesting a speedy trial, Lam never moved to substitute counsel or dismiss the indictment prior to trial. Moreover, as elaborated below, we agree with the district court that each continuance was granted in accordance with the legitimate needs of competent counsel, and find that Lam ultimately benefited from the time Staniels invested in preparing his case. Under these circumstances, we believe it would be inappropriate to permit Lam to avoid responsibility for legitimate delays which were necessary for and beneficial to his defense.

To be sure, we have held in the context of an STA claim that when a defendant expressly asserts his speedy trial right before the trial court, he preserves that right even if his actions contradict his lawyer's behavior. *See United States v. Hall,* 181 F.3d 1057 (9th Cir.1999) (holding that a defendant who directly asserted his statutory speedy trial right, moved to substi-

tute counsel, and moved to dismiss the indictment prior to trial sufficiently preserved the right on appeal, even though counsel failed to raise the issue);[9] *cf. United States v. Lloyd,* 125 F.3d 1263 (9th Cir.1997). It is also true that in virtually all of the cases where we have denied a speedy trial claim on the ground that defense counsel acquiesced in the trial delays, the defendant himself expressly agreed to the continuances or stipulated to the factual bases underlying the requests. *See, e.g., United States v. Shetty,* 130 F.3d 1324 (9th Cir.1997); *cf. United States v. Ramirez–Cortez,* 213 F.3d 1149, 1156 (9th Cir.2000) (holding that a defendant had not waived his STA claim by stipulating to a continuance in order to negotiate a plea bargain, which is not excludable under the STA's "ends of justice" provision).

Here, however, the twenty-six day duration of the trial culminating in the hung jury attests to the trial's complexity and the effectiveness of Staniels's preparation. For much of the time, the spectre of the death penalty loomed realistically over the proceedings, and Staniels was understandably reluctant to forego the necessary preparations for such a contingency. Under these facts, and absent a showing of deficient performance on counsel's part, we decline to permit a defendant's interest in a speedy trial to override his attorney's legitimate assessment of the complexity of a case and his corresponding need to prepare. To hold otherwise would risk setting up an irreconcilable conflict with a defendant's right to effective assistance of counsel, which could subsequently be exploited by a defendant in a complex case. In this case, Staniels indisputably provided vigorous and effective representation, and

---

9. By contrast, although Lam repeatedly asserted his desire for a speedy trial to the district court and expressed his dissatisfaction with Staniels for being so busy and failing to honor his wishes, he did not move to replace Staniels or dismiss the indictment prior to trial.

we find that his actions were fundamentally aligned with Lam's interests. Indeed, Lam's present arguments notwithstanding, the delays sought by his attorney ultimately inured to his benefit. Hence, we cannot conclude that the district court clearly erred in finding that the defendant was responsible for the delay in bringing the case to trial.

Turning to the third *Barker* criterion, Lam's repeated assertions of his speedy trial right appear at first glance to militate in his favor. However, as the district court noted, the fact that Lam (through Staniels) was responsible for much of the delay and waited so long after the conclusion of the trial to file a motion to dismiss the indictment weighs heavily against him. As the Supreme Court stated in *United States v. Loud Hawk*, 474 U.S. 302, 314, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986), although a finding that a defendant repeatedly asserted his speedy trial right is entitled to "strong evidentiary weight" under *Barker*, "[t]hese assertions . . . must be viewed in the light of [his] other conduct." *Id.* The Court found that the *Loud Hawk* defendants' repeated assertions of their speedy trial rights had been contradicted by their repeated filings of frivolous petitions and unsuccessful motions in the district court, which contributed to the delay in their trial. *Id.* at 314–15, 106 S.Ct.

648. Accordingly, the Court refused to weigh this factor in the defendants' favor. Here, because we find that Lam's counsel's actions are properly attributable to Lam, his successive requests for continuances considerably diminish the weight of Lam's assertions of his speedy trial right.[10]

■ Finally, given our conclusion that Lam is responsible for the delay in his trial, he bears the burden of demonstrating actual prejudice under the fourth *Barker* criterion. *Manning*, 56 F.3d at 1195. As we stated in *Aguirre*, 994 F.2d at 1456, "*Doggett* holds that whether the defendant must show actual prejudice depends on whether it is he or the government who is responsible for the delay." Put another way, "*Doggett* holds that we should presume prejudice only if the defendant is not responsible for the delay." *Id.* at 1457. If, on the other hand, the defendant is responsible for the delay in his trial, then he carries a heavy burden of demonstrating actual prejudice to succeed on a speedy trial claim. *Id.* at 1458. This Lam cannot do.

"Actual prejudice can be shown in three ways: oppressive pretrial incarceration, anxiety and concern of the accused, and the possibility that the accused's defense will be impaired." *Beamon*, 992 F.2d at 1014 (citing *Doggett*, 505 U.S. at 654, 112

---

**10.** Indeed, taken to its logical extreme, attributing responsibility for his counsel's actions to Lam raises the question of whether Lam may have thereby waived his constitutional right to a speedy trial. As we stated in *United States v. Manning*, 56 F.3d 1188, 1195 (9th Cir.1995), "If the delay can be attributed to [the defendant] himself, he will be deemed to have waived his speedy trial rights entirely." *Cf. Sandoval*, 990 F.2d at 483. Significantly, however, both *Manning* and *Sandoval* involved situations where defendants knowingly and intentionally evaded law enforcement authorities and subsequently alleged violations of their speedy trial rights. As we stated in *United States v. Aguirre*, 994 F.2d 1454, 1457

n. 5 (9th Cir.1993), it is important to distinguish cases where the defendant simply fails to assert his speedy trial right from situations "where, in the face of an indictment, a defendant takes affirmative steps to elude law enforcement and thus causes the delay himself. In such cases, a finding of waiver is proper and courts needn't perform the *Barker* balancing test." Thus, under standard waiver analysis, as mandated by *Barker*, Lam's failure to move to dismiss his indictment prior to trial does not constitute "an intentional relinquishment or abandonment of a known right or privilege." *Sandoval*, 990 F.2d at 483 (internal quotations omitted).

S.Ct. 2686). Of these, "the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker*, 407 U.S. at 532, 92 S.Ct. 2182. In this regard, Lam argues that his defense at trial was impaired by lapses in several witnesses' memories, as well as by the loss of potentially exculpatory evidence. Such impairments were invariably prejudicial, Lam contends, given the hung jury and the possibility of outright acquittal. Furthermore, Lam claims that the delay in his trial permitted the government to eventually apprehend and secure the testimony of Quong Pham, the key accomplice who agreed to testify against Lam in a second trial and thereby compelled the plea agreement.

However, Lam cannot credibly point to any specific damage to his defense stemming from the delay in his trial. *See Loud Hawk*, 474 U.S. at 315, 106 S.Ct. 648 (noting with respect to alleged missing witnesses or loss of memory due to trial delay, that such "possibility of prejudice is not sufficient to support respondents' position that their speedy trial rights were violated"). Lam's contentions regarding alleged defects in witness testimony or lost evidence amount at most to speculation and fail to demonstrate any actual prejudice to his defense. Moreover, given that Quong Pham was unavailable and did not actually testify at his trial, Lam's claim of actual prejudice is unavailing in that respect, as well.

The only real prejudice that Lam can credibly claim is the fact that he was incarcerated throughout his delay, primarily in "total separation" conditions. Such incarceration, along with the attendant anxiety to an accused, is of significant concern given the centrality of the liberty component of the prejudice inquiry. *See MacDonald*, 456 U.S. at 8, 102 S.Ct. 1497;

*Loud Hawk*, 474 U.S. at 312, 106 S.Ct. 648; *Clymer*, 25 F.3d at 827 n. 3. However, this factor must be balanced and assessed in light of the other *Barker* factors, including the length, reasons, and responsibility for the delay. *See Barker*, 407 U.S. at 533, 92 S.Ct. 2182; *Doggett*, 505 U.S. at 655–56, 112 S.Ct. 2686; *Beamon*, 992 F.2d at 1014–15. Particularly given the fact that Lam eventually pleaded guilty to the charges, his fourteen and one-half month incarceration by itself does not appear to outweigh all of these other considerations.

■ In sum, we conclude upon weighing each of the *Barker* factors that Lam's constitutional right to a speedy trial was not violated.

### B. STA Claim

■ In addition to his constitutional claim, Lam argues that the delay in bringing his case to trial violated the STA. Subject to certain important exceptions, the STA requires, inter alia, that all criminal trials "commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1). Pursuant to 18 U.S.C. § 3162(a)(2), "If a defendant is not brought to trial within th[is] time limit ... the information or indictment shall be dismissed on motion of the defendant," either with or without prejudice. We find, however, that Lam waived his right to claim an STA violation because he failed to file a motion to dismiss the indictment until after his trial.

The text of the STA reads, in relevant part, as follows: "Failure of the defendant to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere shall constitute a waiver of the right to dismiss under this section." 18 U.S.C.

§ 3162(a)(2). Given that Lam waited thirteen months after his trial had begun to file a motion to dismiss, the plain language of the statute compels our conclusion that Lam waived his statutory speedy trial right.[11]

### C. Prosecutorial Misconduct Claims

Lam argues that the prosecution knowingly put on false testimony and failed to produce evidence that was potentially exculpatory, in violation of the Double Jeopardy and Due Process Clauses of the Constitution.

■■■ Many of Lam's allegations relate to minor inconsistencies in witness testimony that, even assuming prosecutorial misconduct, clearly amount to harmless error under *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (requiring the reviewing court on direct appeal to be able to declare that an error was "harmless beyond a reasonable doubt"). Other claims are not appropriate for review on direct appeal, in that they may call for evidentiary hearings that would be better resolved on habeas review.[12] Furthermore, most of the issues raised by Lam were not preserved by defense counsel at trial, and hence are governed by the plain error standard of review. *See Brecht v. Abrahamson,* 507 U.S.

619, 635, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1992) (confirming that the federal "plain error" rule applies in determining whether a defendant may raise a claim for the first time on direct appeal) (citation omitted); *United States v. Cooper,* 173 F.3d 1192, 1203 (9th Cir.1999). Under this standard, a conviction can be reversed only if, viewed in the context of the entire trial, the impropriety seriously affected the fairness, integrity, or public reputation of judicial proceedings, or where failing to reverse a conviction would result in a miscarriage of justice. *United States v. Molina,* 934 F.2d 1440, 1446 (9th Cir.1991).

■■■ Given that Lam's trial resulted in a mistrial and not in a conviction, we find that under these facts he cannot prove plain error, inasmuch as he is required to demonstrate not only that he did not deserve to be convicted, but that there was a reasonable probability that he would have actually been acquitted. Indeed, we have never granted a dismissal with prejudice for alleged acts of prosecutorial misconduct at a trial which resulted in a hung jury. Furthermore, in cases where a defendant moves for and is granted a mistrial on the basis of prosecutorial misconduct, the Double Jeopardy Clause does not bar a retrial unless the prosecution deliberately intended to provoke a mistrial motion. *Greyson v. Kellam,* 937 F.2d 1409, 1413

---

**11.** The district court declined to dismiss Lam's STA claim on this basis, citing our decision in *Hall.* There we broadly held that "where defense counsel does not assert his client's right to a speedy trial, a defendant may alert the court directly of his desire not to waive those rights." *Hall,* 181 F.3d at 1060–61. We also emphasized the fact that "the right to a speedy trial belongs not only to the defendant, but to society as well.... Accordingly, regardless of the willingness of counsel to accept pretrial delay, the Speedy Trial Act assigns district courts an independent responsibility to protect both the defendant's and the public's strong interest in the timely administration of justice." *Id.* at

1061–62 (internal quotations and citations omitted). However, as mentioned earlier, *Hall* is distinguishable from the present case, in that unlike Lam, the defendant there filed pro se motions to remove his attorney and dismiss his indictment prior to trial.

**12.** For example, Lam claims that the government failed to produce a report comparing the gasoline from the cans in his house to that which was used in the fire, and that the district court erred in denying an evidentiary hearing into this matter. The government denies that any gasoline comparison was ever performed.

(9th Cir.1991). In this case, Lam has not asserted that the government deliberately intended to provoke a mistrial.

The sole issue with any realistic potential to have prejudiced the defense involves a dispute over language translation that may have impacted the jury's perception of Lam's veracity regarding the gasoline cans found at his house. Specifically, Lam claims that the prosecution knowingly put on misleading testimony from law enforcement personnel that Lam had told them he had purchased the cans more than two years earlier. Given that some of the cans were found to have been manufactured more recently, the prosecution argued at closing that Lam's statements were clear evidence of his dishonesty, casting further doubt on Lam's denial of his involvement in the fatal arson. Significantly, the plain error standard does not apply here, given that Lam's counsel objected to the prosecution's testimony regarding its translation of Lam's statements.

Lam's statements to investigators were based on translations from Vietnamese into English performed by a law enforcement officer. Immediately prior to trial, Lam's counsel employed the services of an interpreter who contended that Lam actually told the officers that he had purchased "some of" the cans two years earlier. In spite of this discrepancy, the prosecution continued to argue its version of Lam's statements (and therefore Lam's dishonesty on this critical point) to the jury.

▮ Given that Staniels presented the alternative translation to the prosecution only hours before trial, we find that Lam's contention that the prosecution knowingly presented false testimony on this matter to be groundless. The competing versions of Lam's statements to the investigators appear to have represented an honest disagreement which was properly brought out through the presentation of alternative

testimony and cross-examination. Defense counsel had ample opportunity to offer its own translation and contest the government's version of Lam's statements before the jury.

In sum, we find that Lam's double jeopardy and due process claims lack substance and do not warrant reversal.

### IV.

Lam fails to demonstrate a violation of his constitutional and statutory rights to a speedy trial. In addition, his double jeopardy and due process claims fall short of meriting relief. Accordingly, we affirm his conviction.

**AFFIRMED.**