**UNITED STATES of America, Plaintiff—Appellee,**

v.

**Pius AILEMEN, aka P aka Muhammed Popoola, Defendant—Appellant.**

**No. 99–10377.**
**D.C. No. CR–94–00003–CRB (VRW).**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 12, 2002.

Decided July 29, 2002.

Before LAY,* THOMPSON, and TALLMAN, Circuit Judges.

MEMORANDUM**

A jury found Pius Ailemen guilty of conspiracy to distribute heroin and cocaine (21 U.S.C. § 846), engaging in a continuing criminal enterprise (CCE) (21 U.S.C. § 848), and distributing or aiding and abetting in the distribution of heroin (21 U.S.C. § 841(a)(1); 18 U.S.C. § 2). The district court vacated two of the counts at sentencing pursuant to *Rutledge v. United States*, 517 U.S. 292, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996), and sentenced Ailemen on the CCE count to a term of imprisonment and supervised release. Ailemen asks us to reverse his conviction, arguing that the district court committed numerous trial errors. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

### 1. Grand Jury's Reliance on Duncan's Testimony

Ailemen contends the district court should have dismissed the indictment on the ground that the grand jury heard testimony from Keesha Duncan, whose cooperation was allegedly secured because of evidence gained from a suppressed wiretap. We disagree. As a general rule, a defen-

---

* The Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

dant is not entitled to have his indictment dismissed on the ground that the grand jury relied on illegally-obtained evidence. *See United States v. Calandra*, 414 U.S. 338, 344–45, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); *Gelbard v. United States*, 408 U.S. 41, 60, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972); *United States v. Haynes*, 216 F.3d 789, 797–98 (9th Cir.2000) (as amended), *cert. denied*, 531 U.S. 1078, 121 S.Ct. 776, 148 L.Ed.2d 674 (2001). Ailemen argues that this general principle is inapplicable because the wiretap statute, 18 U.S.C. § 2515, authorizes more stringent remedies than the judicially-created exclusionary rule. Ailemen, however, was convicted by a petit jury which did not consider the tainted testimony. Consequently, "any error in the grand jury proceeding connected with the charging decision was [rendered] harmless beyond a reasonable doubt." *United States v. Mechanik*, 475 U.S. 66, 70, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986) (footnote omitted); *see also Guam v. Muna*, 999 F.2d 397, 399 (9th Cir.1993).

### 2. Constitutional Speedy Trial Claim

■ Ailemen asserts a violation of his Sixth Amendment right to a speedy trial because of the five year time-span between his initial indictment and commencement of trial. After considering the four factors articulated in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) and *Doggett v. United States*, 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992), we conclude that there was no speedy trial violation.

The first factor, length of the delay, weighs only slightly, if at all, in Ailemen's favor. *Cf. United States v. Aguirre*, 994 F.2d 1454, 1456–57 (9th Cir.1993). The second factor does not militate in Ailemen's favor because most of the delay was caused by pretrial litigation and Ailemen's change of counsel. Neither cause of delay can be blamed on the government. *See United States v. Loud Hawk*, 474 U.S. 302, 316–17, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986); *United States v. Lam*, 251 F.3d 852, 857–58 (9th Cir.), *cert. denied*, —— U.S. ——, 122 S.Ct. 503, 151 L.Ed.2d 413 (2001); *United States v. Guerrero*, 756 F.2d 1342, 1349–50 (9th Cir.1984).

The third factor weighs heavily against Ailemen because he did not assert his right in a timely fashion; in fact, he waited until two months *after* his conviction to move to dismiss the indictment on speedy trial grounds. *See Lam*, 251 F.3d at 859. Ailemen explains that he delayed filing a speedy trial motion because Judge Breyer decided to defer ruling on Victor Onuaguluchi's motion during Onuaguluchi's trial. But that did not relieve Ailemen from asserting his right to a speedy trial and timely filing his own motion to dismiss.

Turning to the fourth factor, we are not persuaded by any of Ailemen's claims of prejudice. The anxiety he suffered as a result of his prosecution is indistinguishable from that suffered by other criminal defendants. *See United States v. Mohawk*, 20 F.3d 1480, 1486 (9th Cir.1994). Additionally, his defense was not impaired by the deaths of potential defense witnesses, because those deaths preceded the delay caused by the wiretap litigation. Nor was his defense impaired by the destruction of the surveillance tapes, as they were destroyed only after they were turned over to defense counsel. Finally, although the length of Ailemen's pretrial incarceration was significant, there was no speedy trial violation in light of the other factors. *See Lam*, 251 F.3d at 860.

### 3. Kali Knapp's Testimony

■ Ailemen contends that Kali Knapp's (aka Kali Hidalgo's) testimony was inadmissable because her cooperation and testimony were "derived from" the

unlawful wiretap. We disagree. Knapp's testimony was admissible under the attenuated basis exception because the evidence from the unlawful wiretap did not induce or coerce her testimony. *See United States v. Smith*, 155 F.3d 1051, 1062 (9th Cir.1998). Her declaration states that "[n]othing relating to the wiretap was mentioned" during her interview with law enforcement agents, and that the wiretap evidence did not influence her decision to cooperate. This is consistent with the declarations of the government agents. Further, the fact that the agents intercepted only two telephone calls between Knapp and Ailemen, and neither of the calls was drug-related, undercuts Ailemen's argument that Knapp's testimony was induced by the wiretap.

■ Finally, the district court did not abuse its discretion in refusing to hold an evidentiary hearing on this issue, because there was nothing to suggest that Knapp or the law enforcement agents would have testified differently than they did in their declarations, and nothing in the declarations supports Ailemen's contention.

### 4. Evidence Concerning Government Misconduct And Frame–Up

Ailemen next argues that the district court erred in (1) excluding testimony showing that government agents engaged in "outrageous government misconduct" and (2) in excluding evidence he says would show that he was framed. Ailemen is mistaken.

■ A claim of outrageous government misconduct presents an issue of law for the court. *United States v. Dudden*, 65 F.3d 1461, 1466–67 (9th Cir.1995). Here, the district court correctly precluded Ailemen from raising the issue before the jury.

■ Ailemen's claim that he was framed, by contrast, is a factual claim of innocence that is typically within the province of the jury. However, Ailemen "cannot transform the exclusion of this evidence into constitutional error by arguing that he was deprived of his right to present a defense. The right to present a defense is clearly fundamental, but ... 'the accused ... must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.'" *United States v. Perkins*, 937 F.2d 1397, 1401 (9th Cir.1991) (quoting *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973)). Under the rules of evidence, a district court has discretion to demand an offer of proof to ensure that the jury does not hear inadmissible evidence. *See* Fed. R. Evid. 103(a), (c). Here, the district court acted within its discretion in requiring an offer of proof because defense counsel had previously attempted to circumvent the court's ruling by trying to introduce evidence of government misconduct.

### 5. Exclusion of Agent Silano's Testimony

■ After reviewing Ailemen's offer of proof, the district court precluded Ailemen from calling Robert Silano, the lead agent in the case. Much of Silano's proffered testimony related to Ailemen's claim of outrageous government conduct, and was, therefore, not appropriate for the jury's consideration. Further, a large portion of Silano's proffered testimony was either collateral impeachment or cumulative of other testimony. The district court did not err in excluding Silano's testimony.

### 6. Ineffective Assistance of Counsel

Ailemen raises three separate claims of ineffective assistance of counsel. We review each claim under the standard set forth in *Strickland v. Washington*, 466

U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We ask whether counsels' performance was deficient and, if so, whether Ailemen was prejudiced as a result. *Id.* at 687.

█ Ailemen's first claim is that he did not receive effective assistance of counsel because of the antagonistic relationship between his two attorneys. We are not persuaded. Ailemen cites no authority for the proposition that an antagonistic relationship between counsel constitutes deficient performance. Nor has he made a sufficient showing of prejudice. Much of the feuding between Ailemen's lawyers occurred outside the presence of the jury, and thus, could not have affected the jury's verdict. Additionally, Judge Breyer often considered the arguments of *both* attorneys when they disagreed about strategy or specific court rulings. Finally, the overwhelming evidence against Ailemen persuades us that he suffered no prejudice.

█ Ailemen's second ineffective assistance claim is that his attorneys committed misconduct during the trial. He relies on the district court's post-trial account of their misconduct in the court's letter referring the attorneys to the Standing Committee on Professional Conduct. However, even if the attorneys violated rules of professional conduct, their conduct did not preclude effective representation of their client. If anything, the district court's letter shows that the attorneys were *over-zealous* in their representation. Finally, as with the claim above, Ailemen has not made an adequate showing of prejudice.

█ Ailemen's third claim of ineffective assistance of counsel is based on his attorneys' decision to withdraw the motion to dismiss for outrageous government misconduct during the second day of the post-conviction hearing. We do not agree that the withdrawal of the motion constituted

deficient performance. The defense counsel who withdrew the motion made a strategic assessment that the district court was inclined to undermine the findings supporting the wiretap suppression ruling and that this could adversely affect Ailemen on appeal or at a possible retrial. *See Downs v. Hoyt,* 232 F.3d 1031, 1038 (9th Cir.2000), *cert. denied,* 532 U.S. 999, 121 S.Ct. 1665, 149 L.Ed.2d 646 (2001). Nor has Ailemen established prejudice, because he has not demonstrated a reasonable probability that the district court would have granted the motion and dismissed the indictment if defense counsel had not withdrawn the motion. *See id.* Indeed, it is more likely the motion would have been denied, because there is nothing in the record that shows that the government's conduct was "so grossly shocking and so outrageous as to violate the universal sense of justice." *United States v. Montoya,* 45 F.3d 1286, 1300 (9th Cir.1995).

### 7. *Judicial Bias*

Ailemen's contention that Judge Breyer exhibited judicial bias is without merit. "A trial judge is more than an umpire, and may participate in the examination of witnesses to clarify evidence, confine counsel to evidentiary rulings, ensure the orderly presentation of evidence, and prevent undue repetition. A judge's participation justifies a new trial only if the record shows actual bias or leaves an abiding impression that the jury perceived an appearance of advocacy or partiality." *United States v. Scholl,* 166 F.3d 964, 977 (9th Cir.1999) (citations omitted) (as amended).

█ Judge Breyer's requirement that the defense present offers of proof before calling several of its witnesses was justified in light of defense counsels' repeated attempts to circumvent the court's ruling by trying to put before the jury evidence of government misconduct. Additionally,

the record reveals that the judge's *sua sponte* objections were appropriate, his comments during testimony corrected misstatements of law or evidence, and his denial of defense requests for continuances were well within his discretion.

### 8. Impeachment of Agent Estelle

■ Ailemen contends that the district court erroneously precluded defense counsel from impeaching Agent Estelle with an alleged prior "bad act" arising from his work in a previous case (i.e., the "*Martin* case"). Ailemen sought to impeach Estelle with evidence that, in the *Martin* case, Estelle improperly requested that a conversation with a confidential informant not be recorded. After conducting a hearing and reviewing the *Martin* file *in camera*, the district court concluded that Estelle's conduct was motivated by a desire to protect the informant; his conduct did not involve fraud, deceit or dishonesty. The incident was not a proper subject for impeachment under Rule 608(b), because it was not probative of Estelle's truthfulness.

### 9. Access to "Operational Plans"

■ Defense counsel had sought access to the government's "operational plans" in order to refresh Estelle's recollection as to which agents monitored the body-wire recordings. Judge Breyer reviewed the operational plans *in camera* and precluded their production. Judge Breyer did not err. The plans contained confidential information about surveillance activities. The plans were not discoverable under the Federal Rules of Criminal Procedure, *see* FED. R. CRIM. P. 16(a)(2), nor were they discoverable under the Jencks Act. *See* 18 U.S.C. § 3500(e).

### 10. Impeachment of Ailemen's Testimony With Evidence From Wiretap

■ Ailemen contends that he was deterred from testifying in his own defense because the district court ruled that the government could impeach him with evidence from the suppressed wiretaps. Ailemen, however, waived this issue by choosing not to testify. *See Luce v. United States,* 469 U.S. 38, 43, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984); *Galindo v. Ylst,* 971 F.2d 1427, 1429 (9th Cir.1992). Moreover, even if he had chosen to testify, evidence obtained through an illegal wiretap is admissible to impeach a defendant's testimony. *See United States v. Echavarria–Olarte,* 904 F.2d 1391, 1397 (9th Cir.1990) (as amended).

■ Ailemen further contends that the district court improperly required an offer of proof before ordering some of the suppressed tapes to be translated from Nigerian to English. According to Ailemen, this precluded him from using exculpatory evidence on the tapes for rehabilitation. This argument misses the mark. Ailemen, who had access to the tapes, could have identified any potentially exculpatory material on the tapes and made the requisite offer of proof.

### 11. Jury Instructions

Ailemen contends that the district court gave erroneous jury instructions with respect to the conspiracy charge and the continuing criminal enterprise charge.

■ As to the instruction on the conspiracy charge, Ailemen claims it improperly allowed the jury to convict him without finding that he committed "the grand conspiracy" envisioned in the indictment. He argues that the government should have been required to prove one "over-all" conspiracy that was broad enough to encompass all of the 53 overt acts alleged in the indictment. Ailemen is incorrect. The government was not required to prove a grand conspiracy encompassing the overt

acts in the indictment. *See United States v. Shabani,* 513 U.S. 10, 17, 115 S.Ct. 382, 130 L.Ed.2d 225 (1994).

■ The CCE instruction was also not infirm. Contrary to Ailemen's assertion, the district court correctly instructed the jury that the conspiracy charge could constitute the predicate offense for a CCE conviction. *See United States v. Hernandez–Escarsega,* 886 F.2d 1560, 1571 (9th Cir.1989). Ailemen also contends the instruction improperly permitted the jury to rely on uncharged offenses to satisfy the statute's requirement of a continuing series of three violations. However, we have previously held that uncharged offenses may satisfy the continuing series requirement. *See Hernandez–Escarsega,* 886 F.2d at 1578; *United States v. Sterling,* 742 F.2d 521, 526 (9th Cir.1984). Finally, Ailemen contends the jury should have been instructed that a mere purchaser of drugs cannot be one of the requisite five persons supervised by the defendant. We disagree. Such an instruction was unnecessary. *See Hernandez–Escarsega,* 886 F.2d at 1571. Moreover, the evidence established that Ailemen supervised at least five people who were not mere drug purchasers.

### 12. Cumulative Error

Ailemen argues that there was cumulative error requiring reversal. We disagree. Because we have found no errors in this case, there is no basis upon which to accumulate. *See Fuller v. Roe,* 182 F.3d 699, 704 (9th Cir.1999).

AFFIRMED.