

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| KEITH DOYLE, | No. 10-35330 |
| Petitioner - Appellant, | D.C. No. 2:09-cv-00058-RFC-CSO |
| v. | |
| SAM LAW, Warden at Crossroads Correctional Facility; ATTORNEY GENERAL OF THE STATE OF MONTANA, | MEMORANDUM* |
| Respondents - Appellees. | |

Appeal from the United States District Court
for the District of Montana
Richard F. Cebull, Chief District Judge, Presiding

Argued and Submitted December 8, 2011
Seattle, Washington

Before: GUY, * McKEOWN, and TALLMAN, Circuit Judges.*

Petitioner Keith E. Doyle, a Montana prisoner, appeals from the denial of

---

\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

\** The Honorable Ralph B. Guy, Jr., Senior Circuit Judge for the Sixth Circuit, sitting by designation.

habeas relief with respect to his claim that the passage of 609 days, or roughly 20 months, between his arrest and the commencement of trial violated his Sixth Amendment right to a speedy trial as articulated in Barker v. Wingo, 407 U.S. 514 (1972). Although respondents argue that the state court's decision is entitled to deference under the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254, the district court did not err in finding that, even without such deference, Doyle failed to establish a violation of his Sixth Amendment right to a speedy trial. We affirm.

Doyle was charged, along with Dean Maestas and Cheren Day, with deliberate homicide, or in the alternative, deliberate homicide by accountability, in the beating death of Richard Solwick in Butte, Montana, on March 3, 2003. See Mont. Code Ann. §§ 45-5-102(1), 45-2-302 (2003). Maestas and Day pleaded guilty and testified at Doyle's trial. Doyle was convicted of deliberate homicide by accountability, and was sentenced to 65 years of imprisonment. Unable to make bail, Doyle was detained between his arrest on May 5, 2003, and the commencement of trial on January 3, 2005.

Petitioner's claims, including the speedy trial claim, were rejected on direct appeal. State v. Doyle, 160 P.3d 516, 522-26, ¶¶ 15-39 (Mont. 2007). Post-conviction relief was denied, and that decision was affirmed. Doyle v. State, No.

DA 08-0218 (Mont. Mar. 31, 2009) (unpublished). A timely habeas petition followed. Adopting the magistrate judge's findings and recommendations, the district court dismissed all five claims and granted a certificate of appealability on the only claim before us. Reconsideration was denied, and this appeal followed.

The district court's denial of a habeas petition is reviewed de novo. McClure v. Thompson, 323 F.3d 1233, 1240 (9th Cir. 2003). Doyle's speedy trial claim was rejected under a state-law framework that purported to apply the factors outlined in Barker, but which was later abrogated by the Montana Supreme Court for having "strayed considerably from the actual balancing approach envisioned in Barker." State v. Ariegwe, 167 P.3d 815, 828 ¶ 27 (Mont. 2007) (abrogating in part City of Billings v. Bruce, 965 P.2d 866 (Mont. 1998)). Declining to decide whether the state court's application of the now-abrogated Bruce framework was contrary to or an unreasonable application of Barker, we turn first to the constitutional question of whether Doyle has demonstrated a denial of his Sixth Amendment right to a speedy trial.

Barker adopted a "difficult and sensitive balancing process" through which "the conduct of both the prosecution and the defendant are weighed." Barker, 407 U.S. at 530, 533. Examining the four factors identified in Barker, courts must determine "whether [the] delay before trial was uncommonly long, whether the

government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result." Doggett, 505 U.S. 647, 651 (1992); see also United States v. Lam, 251 F.3d 852, 855 (9th Cir. 2001). The facts relevant to this claim are not in dispute, and, since Doyle had the opportunity to develop the record in state court, we presume that the state court's factual findings are correct. 18 U.S.C. § 2254(e)(1).

First, there is no dispute that the length of delay of roughly 20 months is sufficient to cross the threshold and trigger further inquiry. See Doggett, 505 U.S. at 651-52 (quoting Barker, 407 U.S. at 530-31). Considering the seriousness of the charges, the volume of discovery, and the extensive forensic evidence involved, the district court did not err in finding that the delay did not greatly exceed the threshold and does not weigh heavily in Doyle's favor. Lam, 251 F.3d at 857 (finding 15-month delay triggered further inquiry, it only "militate[d] slightly in Lam's favor"); see also United States v. King, 483 F.3d 969, 976 (9th Cir. 2007) (finding nearly two years was not excessive).

Second, when considering the reasons for the delay, Barker asks whether the government or the defendant is more to blame. Vermont v. Brillon, 129 S. Ct. 1283, 1290 (2009). Also, "different weights should be assigned to different

reasons," with any deliberate attempt to delay the trial in order to hamper the defense weighted heavily against the government, a more neutral reason such as negligence or overcrowding weighted less heavily, and a valid reason—such as a missing witness—justifying appropriate delay. Barker, 407 U.S. at 531. The district court concluded that the parties shared responsibility for much of the delay, except that 175 days of delay were attributed to the state and 84 days were attributed to the defense.

Doyle argues that it was error for the district court to attribute the initial 225-day period between his arrest on May 5, 2003, and the first trial setting on December 15, 2003, to both parties when it is undisputed that the crime lab had not completed its analysis of the evidence. As the recognition of a threshold dividing ordinary delay from presumptively prejudicial delay suggests, "ordinary procedures for criminal prosecution are designed to move at a deliberate pace." Barker, 407 U.S. 521 n.15 (citation omitted). Some delay to allow preparation for trial would be consistent with the right to speedy trial. Doggett, 505 U.S. at 656 ("speedy trial standards recognize that pretrial delay is often both inevitable and wholly justifiable"). Here, the charges were serious and the record, even without the completed crime lab report, was voluminous. We find no error in this regard, or in the district court's attribution of the other periods of delay. Further, the 175-

day period that was attributed to the state alone as a result of the delay in the crime lab's processing of the evidence was not the result of deliberate or bad faith delay, nor official negligence that interfered with timely processing. Barker, 407 U.S. at 531.

Respondents concede that the third factor was properly weighed in favor of Doyle as he asserted his right to a speedy trial by writing to the court two months after his arrest, seeking release on bail, and moving to dismiss the charges on speedy trial grounds before trial. Although the defense found it necessary to request a number of continuances, none were made in bad faith or suggested an effort to derail the proceedings. Lam, 251 F.3d at 858; McNeely v. Blanas, 336 F.3d 822, 831 (9th Cir. 2003).

Fourth, while presumptive prejudice alone cannot demonstrate a Sixth Amendment violation, "its importance increases with the length of delay." Doggett, 505 U.S. at 655-56. To warrant relief, "negligence unaccompanied by particularized trial prejudice must have lasted longer than negligence demonstrably causing such prejudice." Id. at 657. Prejudice should be assessed in light of three interests: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." Barker, 407 U.S. at 532.

Some prejudice is presumed to result from extended pretrial detention. However, Doyle's complaints about the conditions of confinement in an overcrowded temporary facility without access to recreation and the "extreme discomfort" he experienced related to the back surgery he underwent several months prior to his arrest did not constitute oppressive pretrial incarceration or demonstrate that the delay significantly aggravated the anxiety and concern beyond what is inherent in pretrial detention. Further, the prejudice Doyle claims concerning damage to his relationship with Katrina Bowen and their daughter was not the product of the pretrial delay. See United States v. Gregory, 322 F.3d 1157, 1163 (9th Cir. 2003).

Turning to the most serious form of prejudice, impairment of his defense, Doyle claimed that the delay was used to pressure Bowen into testifying against him at trial and resulted in the unavailability of several potential witnesses at trial. Assuming Bowen's equivocal testimony was credible, it did not support an inference that the state had used the delay to badger or coerce Bowen into incriminating Doyle. See Gregory, 322 F.3d at 1164. Although Kay Paige died before the defense had an opportunity to interview her, nothing in the record suggests that even if she could have been effectively impeached the testimony could have been favorable to Doyle. Finally, while Doyle's sister, his nephew, and

his nephew's girlfriend were never interviewed and could not be located by the investigator prior to trial, Doyle has made no claim about how the unavailability of these witnesses impaired his defense. The possibility of prejudice from the unavailability of these witnesses is not sufficient to demonstrate actual prejudice. See Lam, 251 F.3d at 860.

Considering the Barker factors together, the delay was not excessive, the right to speedy trial was sufficiently asserted, the state bore more responsibility for the delay than the defense but this factor is not weighted heavily against the state, and the presumed prejudice in this case did not warrant relief for violation of the Sixth Amendment right to a speedy trial.

**AFFIRMED.**